No. 23-6925

IN THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA
*Plaintiff-Appellee.*

v.

SEAN NOVIS
*Defendant-Appellant*,

**BRIEF FOR DEFENDANT-APPELLANT SEAN NOVIS**

Petition for Review from the United States District Court
for the Eastern District of New York, No. 20 Cr. 335
Before the Honorable Joan M. Azrack

**WOMBLE BOND DICKINSON (US) LLP**
Luke V. Cass
Michael E. Clark
Jasmine G. Chalashtori
2001 K Street, NW
Washington, D.C. 20006
Tel: (202) 467-6900
luke.cass@wbd-us.com
michael.clark@wbd-us.com
jasmine.chalashtori@wbd-us.com

**KASE & DRUKER**
Jim Druker (*Of Counsel*)
1325 Franklin Avenue, Suite 225
Garden City, New York 11530
Tel: (516) 746-4300
Jim@kaseanddrukerlaw.com

*Attorneys for Defendant-Appellant Sean Novis*

## **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION ..................................................................1

STATEMENT OF THE ISSUES ....................................................................1

STATEMENT OF THE CASE .......................................................................2

    I.     Information Required Pursuant To Local Rule 28.1 ...........................2

    II.    Defendants' Direct Mailing Business ...........................................2

    III.   The Superseding Indictment....................................................7

    IV.   Pretrial Motions ...............................................................8

    V.    The Trial .......................................................................9

    VI.   Charges To The Jury ..........................................................18

    VII.  Rule 29 Motions ..............................................................20

SUMMARY OF THE ARGUMENT ..............................................................21

ARGUMENT ...........................................................................................26

    I.     This Court Should Reverse Mr. Novis' Conviction Due To The
         District Court's Erroneous And Prejudicial Supplemental
         Charge On The Advice Of Counsel Defense. ...................................26

         A.    Standard Of Review .................................................26

         B.    The District Court's Erroneous Supplemental Charge To
               The Jury Deprived Mr. Novis Of An Advice Of Counsel
               Defense And Impermissibly Shifted The Government's
               Burden. ..............................................................27

    II.    This Court Should Reverse Mr. Novis' Conviction Because Mr.
         Novis' Conduct Fell Outside The Ambit Of The Federal Mail
         And Wire Fraud Statutes And The Evidence Was Insufficient
         To Convict Mr. Novis Under Those Statutes....................................38

         A.    Standard Of Review .................................................38

         B.    Mr. Novis' Conduct Did Not Constitute A Scheme To
               Defraud And The Government Failed To Prove A Scheme
               To Defraud. .........................................................39

i.      Mr. Novis' Alleged Misrepresentations Were Not Material. .......................................................................40

ii.     The Record Does Not Support That Mr. Novis Intended To Harm Recipients. .......................................43

III.   This Court Should Reverse Mr. Novis' Conviction Due To The District Court's Erroneous Admission Of Harmful Hearsay Evidence, Including in Violation Of The Confrontation Clause. .......47

     A.   Standard Of Review .................................................................47

     B.   The District Court Committed Harmful Error When It Misapplied Federal Rule Of Evidence 803(3) To Allow The Government To Elicit Hearsay Testimony About Recipients' Beliefs Regarding The Mailings. ...........................48

     C.   The District Court Committed Harmful Error When It Permitted The Government To Introduce Letters And Complaints In Violation Of The Confrontation Clause............52

IV.   This Court Should Reverse Mr. Novis' Conviction Because The Evidence Presented At Trial Was Insufficient To Prove That He Aided And Abetted Mail Fraud. ..........................................................55

     A.   Standard Of Review. ...............................................................55

     B.   The Government Failed To Prove Mr. Novis Had The Intent Necessary To Sustain An Aiding And Abetting Conviction. ...............................................................................55

V.   Mr. Novis Joins In Certain Of Denkberg's Arguments. ...........................57

CONCLUSION .................................................................................................57

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arroyo v. Jones*,
685 F.2d 35 (2d Cir. 1982)................................................................36

*Bryan v. United States*,
524 U.S. 184 (1998)..........................................................................27

*Ciminelli v. United States*,
598 U.S. 306 (2023)..........................................................................22

*Collins v. Scully*,
582 F. Supp. 1100 (S.D.N.Y. 1984).................................................35

*Crawford v. Washington*,
541 U.S. 36 (2004)........................................................................... 54

*Dowling v. United States*,
473 U.S. 207 (1985)..........................................................................38

*Estelle v. McGuire*,
502 U.S. 62 (1991)............................................................................26

*Fountain v. United States*,
357 F.3d 250 (2d Cir. 2004).............................................................39

*Francis v. Franklin*,
471 U.S. 307 (1985)..........................................................................33

*George v. Starbucks Corp.*,
857 F. App'x 705 (2d Cir. 2021) ......................................................21

*Klaehn v. Cali Bamboo, LLC*,
No. 19-CV-1498 TWR (KSC), 2021 WL 3044166
(S.D. Cal. June 14, 2021) .................................................................21

*Levy v. United States*,
626 F. App'x. 319 (2d Cir. 2015) ............................................... 26, 33

*Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*,
875 F.2d 1026 (2d Cir. 1989)...........................................................29

*Pasquantino v. United States*,
    544 U.S. 349 (2005) ................................................................................40

*Percoco v. United States*,
    598 U.S. 319 (2023) ................................................................................22

*Ratzlaf v. United States*,
    510 U.S. 135 (1994) ................................................................................27

*Rosemond v. United States*,
    572 U.S. 65 (2014) ................................................................... 25, 55, 56

*Shepard v. United States*,
    290 U.S. 96 (1933) ................................................................................48

*Simmons v. Dalsheim*,
    543 F. Supp. 729 (S.D.N.Y. 1982) .................................... 34, 35, 37

*Simmons v. Dalsheim*,
    702 F.2d 423 (2d Cir. 1983) ................................................... 33, 34

*United States v. Beech-Nut Nutrition Corp.*,
    871 F.2d 1181 (2d Cir. 1989) ...........................................................28

*United States v. Cardascia*,
    951 F.2d 474 (2d Cir. 1991) .............................................................51

*United States v. Chacko*,
    169 F.3d 140 (2d Cir. 1999) .............................................................39

*United States v. Colasuonno*,
    697 F.3d 164 (2d Cir. 2012) .............................................................28

*United States v. Colton*,
    231 F.3d 890 (4th Cir. 2000) ...........................................................40

*United States v. Corsey*,
    723 F.3d 366 (2d Cir. 2013) .............................................................41

*United States v. Cummings*,
    858 F.3d 763 (2d Cir. 2017) ................................................... 47, 52

*United States v. D'Amato,*
    39 F.3d 1249 (2d Cir. 1994)............................................................... 43, 44, 46, 55

*United States v. Daugerdas,*
    837 F.3d 212 (2d Cir. 2016)........................................................ 27, 31, 34, 36, 37

*United States v. Ferguson,*
    676 F.3d 260 (2d Cir. 2011)...................................................................................47

*United States v. Glenn,*
    312 F.3d 58 (2d Cir. 2002).....................................................................................39

*United States v. Gomez,*
    617 F.3d 88 (2d Cir. 2010).....................................................................................51

*United States v. Greenberg,*
    835 F.3d 295 (2d Cir. 2016)...................................................................................40

*United States v. Greenspan,*
    923 F.3d 138 (3d Cir. 2019)...................................................................... 29, 32, 33

*United States v. Hassan,*
    578 F.3d 108 (2d Cir. 2008)...................................................................................26

*United States v. Ho,*
    984 F.3d 191 (2d Cir. 2020)...................................................................................38

*United States v. Kopstein,*
    759 F.3d 168 (2d Cir. 2014)........................................................................... 27, 31

*United States v. Lawal,*
    736 F.2d 5 (2d Cir. 1984).......................................................................................49

*United States v. Lee,*
    549 F.3d 84 (2d Cir. 2008).....................................................................................47

*United States v. Litvak,*
    889 F.3d 56 (2d Cir. 2018).....................................................................................41

*United States v. Litwok,*
    678 F.3d 208 (2d Cir. 2012)...................................................................................55

*United States v. McClain*,
   377 F.3d 219 (2d Cir. 2004).......................................................... 47, 54

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006)..............................................................26

*United States v. Regent Off. Supply Co.*,
   421 F.2d 1174 (2d Cir. 1970).......................................................41, 42

*United States v. Rigas*,
   490 F.3d 208 (2d Cir. 2007)..............................................................52

*United States v. Sabhnani*,
   599 F.3d 215 (2d Cir. 2010)..............................................................39

*United States v. Schwartz*,
   924 F.2d 410 (2d Cir. 1991)..............................................................39

*United States v. Scully*,
   877 F.3d 464 (2d Cir. 2017)........................... 23, 28, 29, 32, 34, 35, 37

*United States v. Shellef*,
   507 F.3d 82 (2d Cir. 2007)............................................ 21, 41, 44, 45

*United States v. Silver*,
   864 F.3d 102 (2d Cir. 2017)..............................................................26

*United States v. Starr*,
   816 F.2d 94 (2d Cir. 1987)....................................................44, 45, 46

*United States v. Swiderski*,
   548 F.2d 445 (2d Cir. 1977)..............................................................38

*United States v. Toney*,
   27 F.3d 1245, 1250 (7th Cir. 1994) ..................................................33

*United States v. Velez*,
   652 F.2d 258 (2d Cir. 1981)........................................................37, 38

*United States v. Walker*,
   191 F.3d 326 (2d Cir. 1999)..............................................................45

*United States v. Weaver,*
  860 F.3d 90, 94 (2d Cir. 2017) ............................................................41

*United States v. Weimert,*
  819 F.3d 351 (7th Cir. 2016) ..............................................................40

*Warren v. Pataki,*
  823 F.3d 125 (2d Cir. 2016) ................................................................27

## **Statutes**

18 U.S.C. § 1341 ............................................................. 2, 26, 38, 41, 43

18 U.S.C. § 1342 ................................................................................2

18 U.S.C. § 1343 ............................................................... 2, 22, 38, 43

18 U.S.C. § 1346 ..............................................................................22

18 U.S.C. § 1349 ................................................................................2

28 U.S.C. § 1291 ................................................................................1

39 U.S.C. § 3005 ................................................................................4

## **Rules**

Fed. R. Evid. 803(3) ............................................. 9, 24, 25, 47, 48, 49, 50

Fed. R. Evid. 403 ..............................................................................9

Fed. R. App. P. 28(i) ........................................................................56

Fed. R. Crim. P. 29 ..........................................................................20

## **Other Authorities**

1A Fed. Jury Prac. & Instr. § 19:08 (6th ed.) ..........................................27

*L. Sand et al.,* Modern Federal Jury Instructions 8.01 ................................28

Peter H. Huang, *Moody Investing and the Supreme Court: Rethinking the
  Materiality of Information and the Reasonableness of the Investor,* 13
  Sup. Ct. Econ. Rev. 99, 113 (2005) ....................................................21

*United States v. Phillips*,
   21-CR-566 (E.D.N.Y.) ............................................................................17

## STATEMENT OF JURISDICTION

This is an appeal from a May 17, 2022, guilty verdict and conviction against Defendant-Appellant Sean Novis ("Mr. Novis"). Judgment was entered against Mr. Novis on August 3, 2023. Mr. Novis timely filed a notice of appeal on August 14, 2023. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1)    Did the District Court deprive Mr. Novis of an advice of counsel defense when it issued a supplemental instruction that interjected the issue of Mr. Novis' "good faith" into jury deliberations and failed to remind the jury that the Government bears the burden of proof, thereby impermissibly shifting the Government's burden to Mr. Novis?

(2)    Does Mr. Novis' conduct—selling sweepstakes opportunities booklets for a fee—fall within the scope of federal mail and wire fraud statutes and was the evidence insufficient to convict Mr. Novis under those statutes?

(3)    Did the District Court err by admitting improper hearsay evidence regarding booklet recipients' belief that they had won sweepstakes, including in violation of the Sixth Amendment's Confrontation Clause?

(4)    Was the evidence in support of the counts against Mr. Novis for aiding and abetting mail fraud legally insufficient where there was no proof Mr. Novis saw the mailings at issue or had reason to know they were illegal?

## STATEMENT OF THE CASE

### I.     Information Required Pursuant To Local Rule 28.1

By Superseding Indictment filed August 25, 2021, the Government charged Mr. Novis with nineteen felony counts: one count of conspiracy to commit mail fraud (18 U.S.C. § 1349); six counts of mail fraud (18 U.S.C. § 1341); four counts of wire fraud (18 U.S.C. § 1343); four counts of using fictitious names (18 U.S.C. § 1342); and four counts of aiding and abetting mail fraud (18 U.S.C. § 1341).

Commencing on April 26, 2022, Mr. Novis was tried jointly with co-defendant Gary Denkberg ("Denkberg") (collectively, the "Defendants") before a jury, with the Honorable Joan M. Azrack presiding. On May 17, 2022, the jury found Mr. Novis guilty on all counts. On August 15, 2022, each of the Defendants filed a Motion for Judgment of Acquittal. (ECFs 103,104). Judge Azrack denied those motions on July 24, 2023. (ECF 128). On August 3, 2023, the District Court sentenced Mr. Novis to ninety months' imprisonment on Counts 1–11 and 16–19 and sixty months' imprisonment on Counts 12–15, with the sentences to run concurrently. (ECF 137). Mr. Novis timely appealed on August 14, 2023. (ECF 143).

### II.    Defendants' Direct Mailing Business

Defendants were in the mass marketing direct mailing business. This business operated under trade names, had a physical address, and employees. (Tr. 119-21). Defendants specialized in researching and compiling legitimate, available sweepstakes opportunities into a booklet or "report." (Tr. 261-62). Defendants did

not host the sweepstakes detailed in the booklets; rather, the sweepstakes were hosted by unaffiliated, third-party entities like Kellogg's, Ford Motor Company, and Volkswagen. (Tr. 261-62). Defendants advertised their booklets through mass mailings, which were designed to be attractive, enticing, and entertaining to customers. (Tr. 804-05). If mailing recipients returned the small fee requested in the mailings, they would receive the sweepstakes opportunities booklet as advertised, which contained information on available sweepstakes the recipients could enter, if they so chose, to win prizes or money. (Tr. 213, 261-62, 533-36).

Defendants intended for their direct mailing business to comply with the law, so they had *all* their direct mailers reviewed by lawyers for legal compliance in advance of mailing. (Tr. 279, 285-86, 623). Defendants were represented by three attorneys, two from the Lustigman law firm, Sheldon and Andrew Lustigman, and one solo practitioner, Charles Chernofsky. (Tr. 1500-04, 1513). All three lawyers specialized in advertising, marketing, and promotions law and were well-respected in the direct mail industry. (*Id.*). Another attorney named Adam Solomon worked for the Lustigmans and reviewed Defendants' mailings. (Tr. 844–52.)

To ensure compliance with the law, Defendants had copywriters design mailings that were then sent to one or more lawyers for review and advice. (Tr. 745, 1504-05). In many cases, Defendants had *both* firms review the promotions to assure legal compliance. (Tr. 1513). The attorneys reviewed the draft mailings, made

revisions, and prepared written opinion letters memorializing their advice and revisions. (Tr. 623, 849, 852, 1510-12; Exs. DG2, DG3). Defendants followed their lawyers' advice by incorporating their edits into the mailers and obtaining final approval from counsel before mailing them. (Tr. 615, 852, 1509-12).

In 2011, the United States Postal Service sued Defendants' business under the "False Representation and Lottery" Statute, 39 U.S.C. § 3005. The Lustigman firm represented Defendants in ensuing negotiations. (Tr. 1520-21). A consent order was executed in April of 2012 (the "Postal Agreement"), whereby Defendants agreed to pay a fine of $5,000 and agreed not to do business with the companies identified in the Agreement or engage in fraudulent conduct. (Tr. 371-90). However, the Postal Agreement did not require Defendants to admit any wrongdoing, nor did it bar them from continuing to operate a direct mail business. (Tr. 390).

Thereafter, in consultation with counsel, Defendants formed new corporations and created revised promotions. (Tr. 616). According to Attorney Lustigman, Defendants "were adamant that they want[ed] to be in compliance with the 2012 order." (Tr. 1522-23, 1540). As a result, all mailings were taken out of production for attorney review and counsel "tightened" "the standards applicable to them," with special attention given to the provisions of the Postal Agreement. (Tr. 289, 299-300, 1522-23). On multiple occasions, Defendants asked counsel to re-review promotions to confirm that they complied with the Postal Agreement. (Exs. DG2, 396; Tr. 1534-

35).

The counsel-approved mailings repeatedly stated that the recipients were being offered the "opportunity" to enter sweepstakes in which they *might* win prizes. (Exs. 118, 119, 121, 131, 132, 134, 136, 142; Tr. 257-58 (testimony that the mailing in Ex. 119 used the word "opportunity" thirteen times), 174 (government witness testimony that if recipients responded to the mailing they would "receiv[e] a booklet with sweepstakes that they could enter to possibly win.")). The mailings also included various express disclaimers, including: (1) the company sending the mailing was *not* a lottery company, (2) the company sending the mailing did *not* sponsor any sweepstakes, award cash prizes, or enter any sweepstakes for customers, (3) the promotional material was *not* a lottery or award notification, nor a sweepstakes entry form, and (4) the recipient had *not* yet won anything. An excerpt of an example mailing is below:

✓ CONFIRMED-STATUS

Account Activation: 8-Sep

ı¹ı¹ıı¹ı¹ıı¹ı¹ıı¹ıı¹ı¹ı¹ıı¹ı¹ı¹ı¹ı¹ıı¹ı¹ı¹

*********AUSO**MIXED AADC 10573- P1

Nila Norder

Mobridge, SD 57601-2752

FILE AND DATED:
09/08/2016

**APPROVED**

RE: Reported Opportunities in excess of $1,925,000.00

Dear Nila Norder,

This communication is being made directly to you at your known address of record. We are pleased to announce and confirm that you may receive the MFS Entry Notification Directives that Details ==Sweepstakes Opportunities== for an amount in excess of $1,925,000.00 [ONE MILLION NINE HUNDRED AND TWENTY FIVE THOUSAND] Dollars.

Please treat this notification with the utmost priority. You are requested to reply within the time frame of 14 days to Mueller, Franks, & Smith (M.F.S.) to confirm that you accept the Report offered to you and to verify your contact information is correct.

Again, this is a communication Directed to you! Your response is required to initiate full delivery of the Confirmed & Guaranteed Report in excess of $1,925,000.00 [ONE MILLION NINE HUNDRED AND TWENTY FIVE THOUSAND] Dollars ==opportunities== from Mueller, Franks, & Smith directly to you.

The compiled Report Disclosure is filed and is ready for direct delivery to you.

IMPORTANT: This ability to get the Report is real and accurate in every way. Do not delay! . The amount recorded is Verified & Guaranteed in excess of $1,925,000.00 [ONE MILLION NINE HUNDRED AND TWENTY FIVE THOUSAND] Dollars in available Cash & Award ==opportunities.==

==MFS does not conduct sweepstakes or award prizes, you have not yet won. The Report we offer includes entry requirements, based on existing federal, state, and local regulations as reported by the independent sponsors.==

Please make certain that we have correctly input the spelling of your name and address on the Acceptance Form (page 2 of this communication) enclosed and return it to our offices in the envelope provided today. Do not forget to include the nominal Report fee of $25.99. On verification of your signature reply, the staff at Mueller, Franks, & Smith will FINALIZE this matter and deliver the entire Confirmed & Guaranteed Report in excess of $1,925,000.00 [ONE MILLION NINE HUNDRED AND TWENTY FIVE THOUSAND] Dollars in available Cash & Award ==opportunities.==

We are excited for you, sincerely,

*Jeremy Franks*

Jeremy Franks

==You have not yet won anything.==
==No purchase is necessary to enter or win==
==any sweepstakes.==

## Consumer Information

==*Mueller, Franks, & Smith (M.F.S.) is a research and reporting service. We specialize in researching sweep-stakes sponsored and conducted by corporate organization with which the M.F.S. is completely unaffiliated.== We compile these sweepstakes opportunities in a newsletter which sets forth all no purchase entry requirements, based on existing federal, state, and local regulations. ==You have not won any money or prize.== M.F.S. is not liable for any entries made or attempted by readers of its reports. All sweepstakes researched and reported are free to enter, as based on the information supplied by the sponsors. M.F.S. uses all due diligence to accurately report the entry details of each sweepstake. ==M.F.S. is not a lottery company, and does not offer lottery, contest or sweepstakes entries.== This promotion may be under different creative presentation. Void where prohibited by law. Responders will be refunded their purchase price of our report in full if they are dissatisfied with the report. Refund claims must be made in writing to the address on the enclosed envelope within 60 days of purchase. **If you do not wish to receive further mail solicitations from M.F.S., just return the entire letter in the enclosed envelope to M.F.S. with the letters "DNM" next to your name/address area.** Please be informed that your information may be shared with a third party. By paying for your purchase with your check, you are accepting our check acceptance policy. In the unlikely event that your check is returned unpaid, you understand and agree that your check may be electronically represented and we will also collect a returned check processing charge as allowed by state law. If your check is electronically represented, it will not be provided to you with your bank statement, but a copy can be retrieved by contacting your financial institution. We are committed to your privacy and have a privacy policy which is available upon request at the address listed on the outer envelope. ==This communication is not a sweepstakes or award notification and does not guarantee that you will win any sweepstakes.== For specific odds of winning, eligibility requirements, end dates and other terms and conditions in connection with a sweepstakes, you must refer to the specific rules for that sweepstakes. ==You do not need to purchase the Report to enter any sweepstakes.== All customer service issues should be in writing to the address on the enclosed envelope.

6

(Ex. 132 (highlighting added); *see also*, *e.g.*, Exs. 118, 119, 121, 131, 132, 134, 136, 142 (similar)). In short, while the mailings used creative marketing to advertise the booklets, the mailings also contained repeated disclaimers that the recipients did not win anything, nor were they entered to win anything.

Of note, the amount of *potential* winnings in the booklets always matched or exceeded those detailed in the mailings. (Tr. 535-38, 598). For example, if a mailing stated that the recipient had the "opportunity" to win $2 million, those who mailed back the fee would receive a booklet describing sweepstakes totaling $2 million or more in available money and prizes. (*Id.*).

From time to time, Defendants received complaints from customers or from consumer protection agencies. All such complaints were forwarded to counsel for review and response. (Tr. 622, 1525-26). Defendants also maintained a "no questions asked" refund policy for the booklets, which was advertised in the mailings. (Tr. 258-59, 613, 627, 1519, 1525-26). If any customer was dissatisfied with the product and requested a refund, Defendants issued the refund and removed the customer from future mailing lists. (*Id.*).

Defendants ceased operating their businesses in late 2016. (Tr. 163, 281-82).

## III.   The Superseding Indictment

Four years after closing their businesses, Defendants were indicted on multiple fraud-related counts. The Superseding Indictment ("the "Indictment")

alleges that Defendants' mailings, which the Government erroneously calls "prize notices," fraudulently induced recipients to pay fees as a purported condition of receiving promised cash prices that were never given. (ECF 33 at 1). The Indictment claims recipients were misled, including because the mailings "appeared to be personalized notices" that came from "official-sounding entities," and used names of officers and representatives that did not exist. (*Id.* at 2). The Indictment acknowledges that the mailings stated "recipients had not won any money or prizes and/or that the mailings were not prize notifications or sweepstakes entry forms" but alleges that this broad disclaimer "did not correct the false and misleading statements contained in the mailings," without elaborating. (*Id.* at 3). The Indictment further alleges Defendants used their "employees, vendors and other infrastructure" to aid and abet other allegedly fraudulent mass mailing campaigns that "closely mirrored" Defendants' business. (*Id.* at 4, 10). Defendants pleaded not guilty, and the matter was set for trial.

## IV.   Pretrial Motions

Mr. Novis filed various pretrial motions related to the evidence and charges against him. Relevant to this appeal, he moved to exclude as inadmissible hearsay testimony and evidence from customers' relatives describing the customers' purported state of mind. (ECFs 57, 58). The District Court denied Mr. Novis' motion, ruling that this evidence was admissible under Federal Rule of Evidence

8

803(3)'s state of mind exception. (ECF 63 at 1).

Mr. Novis also moved to exclude from evidence letters and consumer complaints written to various authorities by recipients of the mailings because the authors of these documents were not available for cross-examination and because some of the documents did not pertain to Defendants' business, but instead related to other direct mailing businesses. (ECFs 57 and 58). The District Court denied Mr. Novis' motion, ruling that this evidence was admissible to show "notice and fraudulent intent." (ECF 63 at 3). At trial, the District Court allowed the Government to admit a litany of these complaints into evidence on the basis of "notice." (Tr. 1210-22). The District Court orally limited the jury's consideration of the complaints to notice only (Tr. 1139-40, 1179-80, 1253), but did not repeat the limiting instruction when it charged the jury at the end of trial, or thereafter.

Defense counsel reasserted and preserved for appeal Mr. Novis' objections to the foregoing evidence throughout the trial, including for hearsay, Confrontation Clause issues, and pursuant to Federal Rule of Evidence 403. (Tr. 316-17, 318, 340-41, 551-52, 1102-03, 1176-86, 1219-22, 1240-48).

## V.   **The Trial**

Defendants were tried together beginning April 26, 2022. The Government's theory was that Defendants' mailings advertising the sweepstakes opportunity booklets, which the Government referred to as "prize notices" throughout trial (*See,*

*e.g.*, Tr. 24-37, 323-24, 1633-48),[1] intentionally misled recipients into believing they had already won large cash prizes and would receive those prizes in exchange for a processing fee, despite the repeated disclaimers throughout the mailings and notwithstanding Mr. Novis' good faith reliance on his attorneys' advice that the mailings at issue were legal. Thus, a key issue at trial was Mr. Novis' intent; specifically, (1) whether he intended that language in the mailings to mislead recipients; and (2) whether his good faith reliance on the advice of his counsel negated the possibility of fraudulent intent.

At trial, the Government presented various mailings as evidence of Mr. Novis' intent. (Tr. 1114-17). But the Government's own witness, Cheryl Jacquard, a long-time former employee of Mr. Novis' mailing business, described the business as "soliciting customers to purchase a sweepstakes booklet." (Tr. 261-62). Jacquard further testified that Mr. Novis was not running any sweepstakes, and instead was "marketing" booklets for sweepstakes run by other companies. (*Id.*). She also confirmed each of the mailings repeatedly stated that recipients had not yet won anything and testified she believed the company was being truthful in the mailings. (Tr. 257-58, 282). Similarly, Ellen McDevitt, another former company employee and Government witness, testified the mailings offered recipients booklets of

---

[1] Judge Azrack also referred to the mailings as "prize notices" during trial, including in front of the jury. (Tr. 318; *see also* ECF 128 (referring to the mailings as "prize notices" throughout the District Court's Order on Defendants' Rule 29 motions)).

available sweepstakes they could enter. (Tr. 533-38). McDevitt testified that she worked to ensure that the total available potential sweepstakes prizes in the booklet equaled or exceeded the figure stated in the mailings. (*Id.*). Mary Lilienkamp, another former company employee and Government witness, testified that customers "got what they paid for" (a booklet) and she kept a spreadsheet to ensure that buyers would not receive the same booklet twice. (Tr. 694-96).

The Government presented just two alleged "victims" claiming they purchased sweepstakes opportunity booklets. (Tr. 77-99, 586-93). Both testified remotely. One such witness testified that he sent checks in response to the mailings "*in hopes* of winning a large substantial amount of money," but admitted he never entered any sweepstakes. (Tr. 86 (emphasis added)). The Government also introduced into evidence checks written by another mailing recipient, several of which indicated they were for a "report" or "report fee." (Tr. 569, 1305-07).

In lieu of presenting direct testimony from additional purported "victims" of Mr. Novis' alleged scheme, the Government offered as witnesses several relatives of individuals who purchased the booklets. Although there was no evidence that Defendants specifically sought out elderly people to receive their mailings (Tr. 711, 1284-85), prosecutors selected only elderly witnesses or their family members to testify at trial.[2] (Tr. 77-83, 312-24, 459-65, 711, 1284-85). Over Defendants'

---

[2] This case was widely publicized as part of the Department of Justice's Elder Justice

objection,[3] the District Court permitted the Government to elicit testimony from these family members about their relatives' state of mind. (*See* ECFs 58, 60; Tr. 316-17, 323, 340-42, 346, 461-63, 551-552). In each case, the Government elicited testimony that the elderly "victims" were confused by the promotional mailings.

For example, Ann Rivenburg testified that her father experienced "[c]onfusion" and "forgetfulness," "thought" he won "the lottery," even though she, his doctor, and his pastor explained to him that he had not. (Tr. 316-17, 323). Similarly, Ashley Seip testified that her grandfather, who experienced "cognitive decline," "believed" he had won money (Tr. 461-63), and Sharon Soltis testified that her father told her that he "belie[ved]" "he was going to win," despite her explaining to him that he had not won. (Tr. 340-42, 346). None of these "victims" were present at the trial and therefore could not be cross-examined by Defendants about their "beliefs," and the District Court failed to provide any limiting instruction to the jury regarding the use of this testimony.

Over Defendants' objection, the District Court permitted the Government to

---

Initiative and the Civil Division's Elder Fraud Initiative. *See, e.g.*, https://www.justice.gov/usao-edny/pr/justice-department-and-law-enforcement-partners-announce-civil-and-criminal-actions; https://www.justice.gov/opa/pr/federal-jury-convicts-two-new-york-men-operating-mass-mailing-fraud-scheme-targeting-elderly; https://www.justice.gov/file/1544891/download

[3] The District Court deemed all objections at trial to be joint objections of each of the Defendants. (Tr. 486-487).

introduce several letters and consumer complaints concerning the mailings, including ones written to various state attorneys general by either the customer or their family members that again included hearsay statements about the beliefs of individuals not subject to cross-examination. (Tr. 1111-1240). Indeed, some of the letters and complaints admitted into evidence were *not even connected to Defendants' businesses*, but instead concerned other unaffiliated entities. (Exs. 380, 381; Tr. 1218-30). Additionally, the Court admitted, over objection, an article from a Canadian newspaper, describing a search warrant executed in Vancouver in a matter completely unrelated to Defendants' operations. (Tr. 1183-86; Ex. 23). The Court also admitted evidence regarding an unrelated Securities and Exchange Commission civil lawsuit against several Florida individuals engaged in a mass mailing operation also unrelated to Defendants' operations. (Tr. 1176-83; Ex. 343).

Defense counsel objected, asking how the jury could distinguish between the letters and complaints that were related to Defendants' businesses and those that were not. (Tr. 1220). Overruling these objections, the District Court allowed federal agent Nicole Rodriguez to read these letters and complaints, verbatim, to the jury, without requiring the Government to lay any foundation as to whether Defendants ever even saw the complaints, or whether they related to Defendants' operations. (Tr. 1219-30; Exs. 380, 381). The District Court recognized, in its limiting instruction to the jury, that the parties were unable to "cross-examine the[]

13

complaints or their authors." (Tr. 1139-40); however, such a limiting instruction was not provided in the charge to the jury at the conclusion of the trial.

Two of the attorneys who had advised Mr. Novis testified for the defense at trial,[4] and emails were introduced showing that one or more lawyers reviewed and approved, as legally compliant, the content of every mailing before they were sent to recipients. (Tr. 842-74, 1039-87, 1497-1585). Andrew Lustigman testified that his firm was consulted to ensure Defendants stayed in compliance with all applicable laws and regulations. (Tr. 1522). According to Attorney Lustigman, Mr. Novis was "adamant" that he wanted his companies' promotional material to be legally compliant, and that Mr. Novis mentioned this nearly every time they spoke. (Tr. 1523). This was especially true after Defendants entered into the Postal Agreement. (Tr. 609, 623 (McDevitt testifying that the attorney review process became "even stricter" after the Postal Agreement), 1523; Ex. 396). Notably, Attorney Lustigman opined that—to this day—he believes all Defendants' mailings complied with the law. (Tr. 1527-28).

Government witnesses corroborated Attorney Lustigman's testimony. Adam Solomon, one of Defendants' attorneys, testified that Mr. Novis sought his advice in good faith and that he provided legal advice to Mr. Novis so that the mailings would

---

[4] Attorneys Charles Chernofsky and Sheldon Lustigman were not called to testify because they were deceased at the time of trial.

not be fraudulent. (Tr. 887, 911, 1068, 1086-87). Jacquard confirmed that *all* of Mr. Novis' mailings were reviewed by his attorneys multiple times before being mailed and that she was instructed to revise promotional materials in accordance with the legal instructions provided by counsel. (Tr. 252-53, 263, 271, 285-86, 289, 295, 299). Finally, artist and copywriter Thomas Ressler testified that Defendants instructed him and other copywriters to change the language of certain mailings to ensure they conformed with the advice of counsel. (Tr. 803-04). Indeed, soon after entering into the Postal Agreement, Defendants flew their counsel in for an in-person meeting with copywriters to ensure the revised draft mailings complied with the Postal Agreement, a level of supervision Ressler testified was "unusual." (Tr. 803-04, 1534-36).[5]

The evidence at trial showed that throughout the years relevant to the allegations against Mr. Novis, multiple experienced advertising attorneys told him the "reasonable consumer" standard dictated the legality of his company's mailings. (Tr. 1064, 1078, 1518, 1528, 1555-56; *see also* Exs. DG2 & DG3). The attorneys repeatedly opined that, given the mailings' language and extensive disclaimers, no "reasonable consumer" would be deceived by such mailings. (*See id.*).

Attorney Chernofsky also reviewed the Postal Agreement, and afterwards

---

[5] Attorney Solomon testified that he did not recall this meeting, despite Attorney Lustigman's testimony that Attorney Solomon chaired the meeting (Tr. 1536) and emails tending to show that Attorney Solomon was present, (Tr. 1060-62).

reiterated that the mailings were not materially misleading due to the disclaimers and the use of his suggested "win opportunity" language, opining that such promotions "should be acceptable to the Postal Service." (Ex. DG3, Sections 19A & B). Attorney Lustigman and Attorney Solomon similarly testified that in their opinion, as expressed to Defendants, the promotions complied with applicable law. (Tr. 1041, 1066-68, 1527-28).[6] Mr. Novis also had his counsel review and provide advice related to customer complaints. (Tr. 622, 1525).

The Government failed to rebut the evidence showing that Mr. Novis sought, received, and followed the advice of counsel.[7] Instead, the Government argued the advice was a "sham" since Mr. Novis could not have sought such advice in good faith because he knew from the letters and complaints that at least some people claimed to be misled by some of his mailings. (Tr. 824, 1649-1651, 1824, 1943). Notably, Defendants' companies sent millions of mailings, but only received 32 complaints from 29 recipients, just two of whom had actually purchased booklets. (Tr. 65-66, 704). And one of the complainants apologized, in a second letter, for having complained, admitting that she had not read the promotional material

---

[6] Attorney Solomon testified that he was not aware of the Postal Agreement, but numerous emails showed that Defendants expressly requested that he review their promotions to ensure compliance with the Postal Agreement. (Tr. 1041-49; Exs. D-X, D-B1, D-C1, D-D1, D-E1, D-F1).

[7] The Government argued that Denkberg failed to follow his counsel's advice regarding edits to certain mailings but did not argue the same regarding Mr. Novis. (Tr. 1651-54).

thoroughly and that when she did, she realized that she had not won anything. (Ex. 312 at 47).

Regarding the aiding and abetting charges, the Government presented evidence that Defendants shared customer lists and permitted third parties to utilize Mr. Novis' staff to handle ministerial tasks such as inventory and scheduling for their own direct mailing businesses. (Tr. 113, 271-72, 520, 710-11, 719-20, 649-50).[8] Both Jacquard and Lilienkamp testified that they did not review the third-party mailings for content and had no knowledge of Mr. Novis ever reviewing them either. (Tr. 271-72, 692-93). Additionally, Jacquard testified that these third parties utilized a payment processor called PacNet, which had its own compliance department responsible for reviewing the mailings. (Tr. 295-97, 630). Indeed, PacNet's Service Agreement required all mailings be approved by their compliance department before going out. (*See* Ex. 337 at 4, 7, 17; *see also* Ex. 338). Federal agent Nicole Rodriguez testified that she knew that PacNet had a compliance department but that she did not, while investigating the case, review or ask to review any documents obtained from PacNet related to Defendants or the third parties, nor did she review or ask to review any documents from PacNet's compliance department. (Tr. 1433-35).

---

[8] These third-parties were charged separately; that matter is still pending. *See United States v. Phillips*, 21-CR-566 (E.D.N.Y.).

## VI.    Charges To The Jury

The District Court initially relied upon Second Circuit-endorsed jury instructions on the advice of counsel defense. (*See* Tr. 1880-81). After receiving the Court's initial jury instructions, the jury began deliberations at 1:23pm on Friday May 13, 2022. (Tr. 1920). Two hours into deliberations, the jury sent the Court a note requesting a transcript of the testimony of the attorneys who testified. (Tr. 1922). The Court adjourned for the day at 4pm but stated that it would provide the jury with the requested transcripts when the court was next in session. (*Id.*) On Monday, May 16, 2022, when the jury next met, it sent the Court a second note containing three questions. (Tr. 1925). The note read:

> Your Honor. Members of the jury have several questions attached for clarification.
>
> (1)    Can you explain further or clarify "average prudence," and can a person be purposefully misleading but not have intent to break the law as advise [sic] of counsel said they were within the law. [sic]
>
> (2)    Page 21 [of the Court's instructions], the top paragraph about "scheme to defraud" having to be "calculated to deceive persons of average prudence." Does that mean that it is legal to intentionally be predatory towards vulnerable people and execute a scheme to defraud people below average prudence?
>
> (3)    Does any evidence exist of the meeting Mr. Lustigman held with the copyrighter and Adam Solomon. [sic] Lustigman said Solomon said [sic] chaired that meeting.

18

(Court Ex. 2).[9] Regarding the first question, defense counsel requested the District Court instruct the jury to refer back to the original jury instructions, but the District Court declined. (Tr. 1945-48). Instead, it issued the following supplemental charge to the jury:

> I previously instructed you about good faith reliance on counsel. You must follow all of those instructions. A person who acts with an intent to defraud cannot also at the same time act in good faith. If the defendant relied in good faith on the advice of an attorney that his conduct was lawful, then he lacked an intent to defraud. ***However, a person who acts with an intent to defraud cannot rely on advice of counsel in good faith***. And let me of course remind you that you should consider and follow all of my original instructions on the law from last Friday.

(Tr. 1951-52) (emphasis added). Before the District Court gave this supplemental charge to the jury, defense counsel objected, arguing that it "knocks out the entire advice of counsel defense, and goes against the evidence in this case." (Tr. 1941-42). The District Court responded as follows:

> THE COURT: I understand your point. You made it before. What I'm trying to do here is be responsive to their questions. I understand your objections and they are noted for the record. What you all don't know is the jury is leaving at three today because someone's relative has a graduation ceremony. So I will read this to them and they can come back tomorrow morning.
>
> MR. JAMES DRUKER: Very briefly, your Honor. I join in with Mr. Scaring. But the [sentence in the charge beginning 'however'],[10] I

---

[9] The jury also asked, in a separate note on May 16, 2022, whether there was a list in evidence of which company is associated with each of the Defendants. (Court Ex. 3).

[10] (*See* Tr. 1941).

submit, completely negates the defense that we instructed in this case, reasonable reliance upon the advice of counsel.

THE COURT: Yes, and you argued good faith reliance. You argued that the government had a different the [sic] position.

MR. SCARING: Why don't you put that in, your Honor?

THE COURT: Because I'm done. I heard enough. I will give this instruction, and I will tell them I'm sorry it too[k] so long . . .

(Tr. 1947-48).

Defense counsel requested the District Court provide the supplemental charge to the jury when it reconvened the next day, but the District Court declined, insisting that it be provided to the jury that afternoon because the charge was "important to [the jury]." (Tr. 1949). After the District Court read the supplemental instruction to the jury, the jury requested the charge be provided in writing, which the District Court did over defense counsel's objection. (Tr. 1954). Following the supplemental charge, the jury adjourned at 3 p.m. due to a personal commitment. (Tr. 1947). The District Court reconvened the next day at 9:30am. (Tr. 1962). An hour and a half later, at 11:08am, the jury returned its guilty verdict against Mr. Novis. (Tr. 1972-80; Court Ex. 4).

## VII. <u>Rule 29 Motions</u>

The District Court denied each of the Defendants' respective oral and written motions for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (Tr. 1596-1608, 1609; ECFs 103, 104, 128).

## SUMMARY OF THE ARGUMENT

"The world's hardest floors." "The best coffee for you." "Push button. Get Mortgage."[11] Many advertisements make enticing claims, but not all claims are *material* misrepresentations sufficient to support criminal liability for alleged schemes to defraud. This Court has described the kind of conduct at issue in this case as a "fine line," distinguishing cases that "do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes" from "schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007).[12] This case falls into the former category, with Mr. Novis' indictment and conviction serving as an example of not only breathtaking government overreach, but an excessively broad interpretation of the mail and wire fraud statutes that bends them past their breaking point.[13]

---

[11] *See Klaehn v. Cali Bamboo, LLC*, No. 19-CV-1498 TWR (KSC), 2021 WL 3044166 (S.D. Cal. June 14, 2021); *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021); Quicken Loans, *see* https://www.washingtonpost.com/news/arts-and-entertainment/wp/2016/02/07/quicken-loans-tells-us-to-buy-more-and-more-stuff-in-super-bowl-commercial.

[12] Peter H. Huang, *Moody Investing and the Supreme Court: Rethinking the Materiality of Information and the Reasonableness of the Investor*, 13 Sup. Ct. Econ. Rev. 99, 113 (2005) ("[S]tatements that are too vague, promotional or hyperbolic, constitute mere puffery and are therefore immaterial as a matter of law . . . .").

[13] The Supreme Court has recently rejected attempts to expand the scope of the

Mr. Novis submits four issues for appeal in this case, any one of which would result in a new trial or a judgment of acquittal.

*First*, the District Court's supplemental charge in response to a jury question about Mr. Novis' advice of counsel defense was erroneous and harmful. During its deliberations, the jury asked the Court, "[C]an a person be purposefully misleading but not have the intent to break the law as advice of counsel said they were within the law?" (Tr. 1925). The legal answer to this question is "yes," but the District Court did not answer the question as presented. Instead, it issued an erroneous and prejudicial supplemental instruction. (Tr. 1951-52).

The supplemental instruction was fatally flawed because whether Mr. Novis had good faith when seeking the advice of counsel was a burden of production issue that should not be within the province of the jury when determining guilt or innocence. "Good faith," as it relates to the jury's consideration is limited to the defendant's good faith *reliance* on the advice *received*, not on a defendant's *state of mind* when *soliciting* that advice. Moreover, even if, for argument's sake, the advice given by counsel was wrong, it still negates a defendant's intent. By wrongly

---

federal mail and wire fraud statutes. *See Ciminelli v. United States*, 598 U.S. 306, 308, 315 (2023) (holding that the right-to-control theory is not a valid basis for liability under § 1343 because it "vastly expands federal jurisdiction without statutory authorization" and "treats mere information as the protected interest, almost any deceptive act could be criminal."); *Percoco v. United States*, 598 U.S. 319 (2023) (reversing § 1346 conviction based on "special relationship" and "domination and control" of government business test).

interjecting the issue of Mr. Novis' "good faith" in seeking the advice of counsel into the jury's deliberations—an issue the District Court agreed was "important"—it effectively stripped Mr. Novis of his advice of counsel defense and impermissibly shifted the Government's burden of proof to him. In addition, the District Court's supplemental jury charge did not remind the jury of the Government's burden, as mandated by *United States v. Scully*, 877 F.3d 464, 478 n.6 (2d Cir. 2017). This error was not harmless because, as this Court has previously warned, special care needs to be taken on supplemental charges to the jury, who was confused about the law when it sent out the note and convicted Mr. Novis shortly after receiving the District Court's erroneous supplemental charge.

*Second*, the conduct prosecuted in this case falls outside the ambit of the federal mail and wire fraud statutes because the mailings at issue did not contain material misrepresentations, and the Government presented insufficient evidence to prove otherwise. Therefore, it failed to prove Mr. Novis engaged in a scheme to defraud. Mr. Novis' was in the business of selling booklets that compiled available sweepstakes that customers could enter. He solicited the purchase of those booklets through mass mailings. The sweepstakes opportunities provided in the booklet invariably matched or exceeded the amount claimed in the advertisements. Moreover, the mailings repeatedly explained to the recipient that they had not won anything yet, described it as an "opportunity" to win if they entered the sweepstakes

detailed in the booklets, and provided additional disclaimer language. In addition, each mailing template was thoroughly reviewed and approved by Mr. Novis' attorneys, all of whom who were well-respected advertising compliance specialists. Mr. Novis reasonably relied upon that advice.

Reasonable jurists may disagree about unsavory marketing tactics; however, courts uniformly agree that the mere presence of deceptive statements and conduct is insufficient to create the required nexus of causation, materiality, and intent to defraud under the mail and wire fraud statutes. Such is the case, where Mr. Novis' companies sent hundreds of thousands of these mailings each year, but received only a few dozen complaints and just a handful of recipients (or their relatives) testified at trial.

*Third*, the District Court repeatedly allowed the Government to introduce unfairly prejudicial hearsay evidence, including in violation of the Confrontation Clause. The District Court misapplied Federal Rule of Evidence 803(3) to erroneously permit relatives of individuals who bought the sweepstakes opportunity booklets to testify regarding their family members' prior statements that they believed they had won a prize. This testimony was not offered to prove the emotional, sensory, or physical condition of the individuals at the time they received the mailings; instead, it was offered to prove the memory or fact believed—that the customers believed they had won a prize. To the extent the testimony provided both

permissible and impermissible testimony under Fed. R. Evid. 803(3), this was not made clear to the jury at any point, and the Court provided no limiting instruction to the jury regarding this evidence as part of its jury charge.

The District Court also improperly allowed the Government to enter into evidence various letters and complaints to various state attorneys general and other authorities authored by alleged "victims" who were not present at trial and could not be cross-examined by Mr. Novis, in violation of the Confrontation Clause. The District Court admitted the letters and complaints, which would otherwise be rank hearsay, into evidence on the basis they proved notice, without providing any limiting instructions to the jury in its charge at the end of trial. Even if some of these errors could be viewed as harmless when considered alone, these errors in the aggregate deprived Mr. Novis of a fair trial and amounted to a violation of his due process and Confrontation Clause rights, requiring reversal.

*Fourth*, the evidence was not sufficient to support a conviction for aiding and abetting because the Government failed to prove Mr. Novis had full knowledge of the circumstances surrounding the charged offense, as required by *Rosemond v. United States*, 572 U.S. 65, 76-77 (2014).

For the reasons set forth herein, the Court should enter a judgment of acquittal on all counts[14] or remand this case for a new trial.

_____

[14] Because Mr. Novis lacked the requisite specific intent and there was no scheme to

## ARGUMENT

**I.  This Court Should Reverse Mr. Novis' Conviction Due To The District Court's Erroneous And Prejudicial Supplemental Charge On The Advice Of Counsel Defense.**

### A.  Standard Of Review.

An improper jury instruction is reviewed *de novo*, reviewing the charge as a whole for prejudice error. *See United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Hassan*, 578 F.3d 108, 129 (2d Cir. 2008). An erroneous instruction requires a new trial unless the error is harmless. *See id*. An error is harmless "only if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *United States v. Silver*, 864 F.3d 102, 119 (2d Cir. 2017). The Government bears the burden of establishing harmlessness beyond a reasonable doubt. *See id.*

Where an error in jury instructions goes to the burden of proof, a conviction must be reversed if there was a "reasonable likelihood that the jury understood" the instruction to shift or reduce the prosecution's burden of proof. *See Levy v. United States*, 626 F. App'x. 319, 322 (2d Cir. 2015); *Estelle v. McGuire*, 502 U.S. 62, 72,

---

defraud for the reasons set forth *infra*, the Counts in the Indictment against Mr. Novis for conspiracy and fictitious names necessarily fail as well. *See* 18 U.S.C. §§ 1341, *et. seq*.

n. 4 (1991); *see also Warren v. Pataki*, 823 F.3d 125, 137 (2d Cir. 2016) ("If an instruction improperly directs the jury on whether a party has satisfied its burden of proof, it is not harmless error because it goes directly to the merits of the claim, and a new trial is warranted." (cleaned up)). This Court has cautioned that "[a] flawed supplemental instruction can undermine and even invalidate a charge that is otherwise correct if the supplemental instruction is 'sufficiently incomplete and misleading.'" *United States v. Daugerdas*, 837 F.3d 212, 228 (2d Cir. 2016) (quoting *United States v. Kopstein*, 759 F.3d 168, 172 (2d Cir. 2014)).

### B.    The District Court's Erroneous Supplemental Charge To The Jury Deprived Mr. Novis Of An Advice Of Counsel Defense And Impermissibly Shifted The Government's Burden.

To establish Mr. Novis' guilt, the Government was required to prove he acted willfully—that is to say, "with the bad purpose to either disobey or disregard the law." (Tr. 1878). "[I]n order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (citing *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (willfulness element requires knowledge that conduct is unlawful)).

Advice of counsel is a species of good-faith defense that negates the mental state required for the crime. *See* 1A Fed. Jury Prac. & Instr. § 19:08 (6th ed.). "Reliance on the advice of counsel, in cases where fraudulent intent is a required

27

element for guilt, is a defense that tends to refute the government's proof of such intent." *Scully*, 877 F.3d at 478 n.6; *see L. Sand et al.*, Modern Federal Jury Instructions 8.01 ("When fraudulent intent is an element of the crime, the prosecution has the burden of proving such intent beyond a reasonable doubt. It follows that, in such cases, the defendant's 'good faith' constitutes an absolute defense to such crime"). "The thrust of [an advice of counsel defense] is that the defendant, on the basis of counsel's advice, believed his conduct to be lawful and thus could not be found to have had unlawful intent." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989).

A defendant is entitled to a jury instruction on the advice of counsel defense if he, honestly and in good faith: (1) sought the advice of an attorney he considered competent to advise him on the matter, (2) made a full and accurate report to his attorney of all material facts he knew, and (3) acted strictly in accordance with the advice of the attorney. *See United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012). The Third Circuit has succinctly explained the mechanics of the advice of counsel defense as follows:

> Imagine that you are thinking about doing something and want to know if it is legal. So you go to your lawyer and tell him all the material facts about it. He responds that the action is legal as long as you do it the way he tells you to. You follow that advice to the letter. But your lawyer was mistaken—you broke the law. So you get charged with a crime. And it is a specific-intent crime, so it requires proof that you acted willfully or with an unlawful intent. But because you relied on that legal advice in good faith, you did not willfully violate the law.

28

*United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019). Thus, where a defendant has been advised by counsel that his planned course of conduct is lawful, and honestly accepts and relies upon such legal advice, there can be no crime—even if every other element of the offense has been made out—because evidence a defendant following the advice of his counsel in good faith is fundamentally inconsistent with unlawful intent. This is true even if the attorney's advice was legally incorrect. *See Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 875 F.2d 1026, 1028 (2d Cir. 1989) ("[E]ven if the attorney's professional advice had been wrong, it does not follow that . . . reliance on that advice would have constituted bad faith.").

Importantly, however, as this Court has emphasized, advice of counsel is not an affirmative defense, and in no way shifts the ultimate burden of proof, which remains with the Government. *See Scully*, 877 F.3d at 476. In other words, raising an advice of counsel defense does not require a defendant to prove he lacked the *mens rea* necessary to commit the crime. Instead, it only requires him to make a showing sufficient to cast reasonable doubt upon the evidence of his *mens rea* as presented by the Government. Thus, in a fraud case, the burden of proving intent to defraud remains with the government "and that burden does not diminish because [the defendant] raised an advice-of-counsel defense." *Id*. This distinction is subtle but important. So important that this Circuit instructs its lower courts that when an

29

advice of counsel instruction is warranted, the instruction "must" advise the jury "in unambiguous terms" that the burden to prove unlawful intent beyond a reasonable doubt "at all times" remains with the government. *Id.*

Here, the trial evidence established that Mr. Novis consistently sought legal advice on how to run his business lawfully. Mr. Novis did not send out a single promotion without first assuring counsel reviewed it (at least once and, in most instances, twice) and that, according to his counsel, it complied with the law. (Tr. 264, 271, 285-86, 609, 615, 623-36, 857-58, 1068, 1080, 1510, 1513, 1522, 1554). During that time, he was consistently advised by multiple attorneys—well respected experts in their field—that his direct mail business was lawful and his mailings were not materially misleading under the applicable legal standards. Such evidence included testimony that attorneys reviewed the mailings at issue (*id.*), testimony that Mr. Novis directed copywriters to change the language of certain mailings to accord with legal advice he received (Tr. 252, 264), testimony from Attorney Lustigman that Mr. Novis was concerned about following the law and as such followed his legal advice (Tr. 1523), and testimony from Attorney Solomon that Mr. Novis was acting in good faith when he sought legal advice (Tr. 1068). There was no evidence that Mr. Novis intentionally hid anything from his counsel or otherwise did not act in good faith in seeking or implementing his counsel's advice. Nor was there any evidence Mr. Novis' reliance on his counsel's advice was not reasonable. To the

contrary, both of his attorneys who testified at trial, including the Government's own attorney-witness, testified that they believed their legal advice was sound and that, based on that advice, Mr. Novis could reasonably assume his mailings were legally compliant. (Tr. 1527-28, 1068, 1087).

Because the evidence showed that Mr. Novis met each of the elements necessary to assert the advice of counsel defense, the District Court correctly permitted the defense to be presented to the jury and thereafter issued proper initial instructions to the jury regarding the defense. However, in response to a jury question specifically about the advice of counsel defense, the District Court issued a supplemental charge that "undermine[d]" and "invalidated" its prior, proper charge by inserting an unnecessary, an "incomplete and misleading" statement of the law into the jury's deliberations on an issue that the trial court, in its own words, admitted was "important" to the jury. *See Daugerdas*, 837 F.3d at 228 (quoting *Kopstein*, 759 F.3d at 172, 182 (rejecting "the notion that incorrect statements are necessarily cured so long as the charge contains the correct standard elsewhere" and reversing conviction where supplemental charge likely confused jury as to "only viable defense.")). The District Court's supplemental charge to the jury was erroneous and prejudicial in two ways: (1) it deprived Mr. Novis of an advice of counsel defense because it conflated the required *mens rea* (intent to defraud) with good faith and an advice of counsel defense, improperly shifting the burden to Mr. Novis; and (2) it

failed to remind the jury of the Government's burden, as mandated by *Scully*.

*First*, the supplemental charge deprived Mr. Novis of an advice of counsel defense because it effectively told the jury that if it found Mr. Novis "acted" with an intent to defraud then he "[could not] rely on the advice of counsel." (Tr. 1951-52). This simply is not the law. The law is that good faith reliance on advice of counsel can negate intent. (*See supra* at 27-30). Through its supplemental charge, the District Court improperly focused the jury's attention on Mr. Novis' "acts," thereby treating the advice of counsel defense as an affirmative defense, which it is not. *See Scully*, 877 F.3d at 476. In so doing, the Court impermissibly shifted the burden of proving good faith to Mr. Novis. As *Scully* makes clear, however, the law does not require Mr. Novis to prove his good faith at trial. *Id.* (holding "that a defendant need not establish her good faith," instead, the prosecution "must carry" the burden of proof and this "should be included in any instruction to the jury on the advice-of-counsel defense.").

In *Greenspan*, the Third Circuit found a similar advice of counsel instruction was erroneous because its language risked "confusing the jury about who bears the burden of persuasion throughout the trial." 923 F.3d at 147-48. Specifically, the court found the words "avail himself" and "demonstrate" erroneously suggested the defendant "bore the burden of disproving his mental state. But the burden of proving that element, and every other, always remains on the prosecution. So this phrasing

was improper." *Id*. (cleaned up). As in *Greenspan*, the District Court's instruction here shifted the burden to Mr. Novis' "acts" with respect to the defense and put front and center an issue not within the jury's province—his good faith in *seeking* the advice of counsel, not just his good faith reliance upon it.

Because the supplemental charge effectively reduced or shifted the burden of proof to Mr. Novis, it is unconstitutional and warrants a reversal of his conviction. *See Francis v. Franklin*, 471 U.S. 307, 324 (1985); *Levy*, 626 F. App'x. at 322. As the Supreme Court explained in *Francis*, a jury instruction that

> imparts to the jury an unconstitutional understanding of the allocation of burdens of persuasion . . . [when it] create[s] a reasonable likelihood that a juror understood the instructions in an unconstitutional manner, unless other language in the charge explains the infirm language sufficiently to eliminate this possibility. If such a reasonable possibility of an unconstitutional understanding exists, we have no way of knowing that the defendant was not convicted on the basis of the unconstitutional instruction. For this reason . . . when there exists a reasonable possibility that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside.

471 U.S. at 324; *United States v. Toney*, 27 F.3d 1245, 1250 (7th Cir. 1994) (citing *Patterson v. New York*, 432 U.S. 197, 215 (1977) ("A jury instruction that shifts the burden of disproving an element of the charged offense to the defendant is unconstitutional.").

In *Simmons v. Dalsheim*, for example, this Court held that the trial court's instructions to the jury regarding the defendant's alibi defense shifted the burden of proof to the defendant and therefore violated his right to a fair trial. 702 F.2d 423,

424 (2d Cir. 1983) (citing *Simmons v. Dalsheim*, 543 F. Supp. 729, 738-39 (S.D.N.Y. 1982) (concluding the instruction "reasonably could have been interpreted by the jury as requiring [the defendant] to satisfy a burden of persuasion with respect to his alibi defense" and ordering a new trial)). A similar error occurred here, producing the same result: the District Court conflated the advice of counsel defense with an affirmative defense and unconstitutionally proscribed upon Mr. Novis the burden of proving the same. Therefore, Mr. Novis is entitled to a new trial.

*Second*, after confusing the jury about who had the burden of proof, the District Court failed, in its supplemental charge, to advise the jury that the Government bears the burden, as mandated by *Scully*. Therefore, as a matter of law, the jury instruction on the advice of counsel defense was incomplete. *Daugerdas*, 837 F.3d at 228. In *Scully*, this Court held "the district court **must** advise the jury **in unambiguous terms** that the government at all times bears the burden of proving beyond a reasonable doubt that the defendant had the state of mind required for conviction on a given charge." *Scully*, 877 F.3d at 476 (emphasis added). This Court went on to explain "that a defendant need not establish her good faith, seems to us a valuable final reminder of the burden of proof that the prosecution must carry and should be included in **any instruction** to the jury on the advice-of-counsel defense." *See id.* at 478 (emphasis added). Thus, the District Court compounded its erroneous instruction with the additional error of failing to remind the jury of the Government's

burden. *Cf. Collins v. Scully*, 582 F. Supp. 1100, 1102 (S.D.N.Y. 1984), *aff'd*, 755 F.2d 16 (2d Cir. 1985) (holding that jury instruction did not unconstitutionally shift the burden to the defendant because, *inter alia*, the judge "almost immediately preceding" the instruction in question, explicitly instructed the jury about the burden).

The District Court's supplemental charge error was not harmless beyond a reasonable doubt. Advice of counsel is a complete defense in this case and was Mr. Novis' primary defense at trial. Tellingly, the jury returned its verdict of guilty on all counts very soon after the erroneous supplemental jury charge was given, despite there being no dispute that Mr. Novis consulted multiple lawyers in good faith and received opinions that his conduct was lawful. Under "circumstances such as these, where [Mr. Novis'] guilt or non-guilt depended entirely" on the advice of counsel defense "there is no way that the Court can find beyond reasonable doubt that the evidence against [Mr. Novis] was so overwhelming as to exclude a reasonable possibility that the [District Court's] erroneous [supplemental charge on the advice of counsel defense] contributed to the jury's verdict." *See Simmons*, 543 F. Supp. at 749.

The District Court's errors were even more harmful considering they involved a supplemental charge given at the jury's request. This Court has cautioned that "a trial judge must be especially careful with supplemental instructions in response to

35

jury questions because they are often provided to the jury at crucial moments of deliberation." *Daugerdas*, 837 F.3d at 228. "A flawed supplemental instruction can undermine and even invalidate a charge that is otherwise correct if the supplemental instruction is sufficiently incomplete and misleading." *Id.* Indeed, this Court has warned:

> A supplemental charge must be viewed in a special light. It will enjoy special prominence in the minds of the jurors for several reasons. First, it will have been the most recent, or among the most recent, bit of instruction they will have heard, and will thus be freshest in their minds. Moreover, it will have been isolated from the other instructions they have heard, thus bringing it into the foreground of their thoughts. Because supplemental instructions are generally brief and are given during a break in the jury's deliberations, they will be received by the jurors with heightened alertness rather than with the normal attentiveness which may well flag from time to time during a lengthy initial charge. And most importantly, the supplemental charge will normally be accorded special emphasis by the jury because it will generally have been given in response to a question from the jury.

*Arroyo v. Jones*, 685 F.2d 35, 39 (2d Cir. 1982).

All the factors described by this Court in *Arroyo* were heavily in play in this case. The jury was clearly seriously considering the advice of counsel defense from the beginning of their deliberations, as evidenced by their request, just two hours into deliberations, for the transcripts of the attorneys who testified. The jury then sent in a note specifically asking for clarification about the advice of counsel defense, further evidencing that it was weighing heavily in their decision-making. The District Court even recognized that the issue was "important" to the jury and

36

was adamant that the jury receive the supplemental instruction as quickly as possible. Then, the jury requested the supplemental charge in writing, demonstrating that they were interested in examining the District Court's instructions in greater detail. The District Court provided the erroneous supplemental charge in writing despite defense counsel's objections, likely leading the jury to place even greater weight on it. And, since the District Court's supplemental charge misled the jury on the law and was incomplete pursuant to the standards established by *Scully*, the supplemental charge undermined and invalidated any proper jury instruction that preceded it. *See Daugerdas*, 837 F.3d at 228. Indeed, as the court in *Simmons* held, once a judge gives an instruction to the jury that it could reasonably understand as imposing a burden of persuasion on the defendant with respect to a defense, "the charge as a whole cannot possibly clearly inform the jury of the correct rule of law, no matter how many accurate instructions on burden of persuasion the judge previously gave or subsequently gives." 543 F. Supp. at 745. This is especially true given the timing of the supplemental instruction, several days after the Court's original instructions. At that point, the Court's original instructions on the advice of counsel "may well have been but a faint memory in the jurors' minds" and "any vague recollections would certainly have been overshadowed" by the erroneous supplemental charge. *See United States v. Velez*, 652 F.2d 258, 262 (2d Cir. 1981) (reversing judgment of conviction and remanding for a new trial due to erroneous

and prejudicial supplemental charge).

Considering the importance of the instruction and the proportionate evidence, a court cannot be convinced that the error did not influence the jury's verdict. *See United States v. Swiderski*, 548 F.2d 445, 452 (2d Cir. 1977) (error not harmless where jury's note on topic indicated verdict "might well turn" on it). Accordingly, Mr. Novis' conviction should be reversed.

## II. **This Court Should Reverse Mr. Novis' Conviction Because Mr. Novis' Conduct Fell Outside The Ambit Of The Federal Mail And Wire Fraud Statutes And The Evidence Was Insufficient To Convict Mr. Novis Under Those Statutes.**

### A. **Standard Of Review.**

This Court should reverse Mr. Novis' conviction because, as a matter of law, the Indictment alleged conduct beyond the ambit of the federal mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341, 1343. Even if the conduct did fall within the ambit of those statutes, the Government failed to present sufficient evidence at trial to prove a scheme to defraud.

Federal crimes are "solely the creatures of statute." *Dowling v. United States*, 473 U.S. 207, 213 (1985) (internal quotation marks omitted). Therefore, a defendant can challenge a federal indictment on the ground it failed to allege a crime within the terms of the applicable statute. *See United States v. Ho*, 984 F.3d 191, 204 (2d Cir. 2020). This Court reviews questions of statutory interpretation *de novo*. *See id.*

Likewise, this Court reviews challenges to the sufficiency of the evidence *de*

*novo*, viewing the evidence in the light most favorable to the Government. *See United States v. Sabhnani*, 599 F.3d 215, 241 (2d Cir. 2010). "[A] conviction cannot stand when the Government has not introduced sufficient evidence to sustain each essential element of the crime charged beyond a reasonable doubt." *United States v. Chacko*, 169 F.3d 140, 148 (2d Cir. 1999)). "It would not satisfy the [Constitution] to have a jury determine that the defendant is *probably* guilty." *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (emphasis in original). Thus, where the evidence, viewed in a light most favorable to the Government, "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain reasonable doubt." *Glenn*, 312 F.3d at 63 (internal quotations omitted).

### B. Mr. Novis' Conduct Did Not Constitute A Scheme To Defraud And The Government Failed To Prove A Scheme To Defraud.

The "essential elements of a mail or wire fraud violation are: (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Fountain v. United States,* 357 F.3d 250, 255 (2d Cir. 2004), *cert. denied,* 544 U.S. 1017 (2005) (cleaned up).[15] To show a scheme to defraud, the Government must prove: (1) the defendant made material

---

[15] "Because the mail fraud and the wire fraud statutes use the same relevant language, [the Second Circuit] analyze[s] them the same way." *United States v. Schwartz*, 924 F.2d 410, 416 (2d Cir. 1991).

misrepresentations, i.e., statements that had "a natural tendency to influence, or [were] capable of influencing, the decision of the [person] to which [they were] addressed"; and (2) fraudulent intent, i.e., that the defendant contemplated some actual harm or injury to their victims. *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016). Mr. Novis' conduct does not meet these two elements. Specifically, the Government failed to prove that: (1) Mr. Novis' alleged misrepresentations, if any, were material to the bargain; and (2) Mr. Novis had the requisite intent to harm the recipients of the mailings.

### i.    *Mr. Novis' Alleged Misrepresentations Were Not Material.*

While broad, the federal mail and wire fraud statutes are not limitless. *See, e.g.*, *United States v. Weimert*, 819 F.3d 351, 356 (7th Cir. 2016) ("We must take care not to stretch the long arms of the fraud statutes too far."); *Pasquantino v. United States*, 544 U.S. 349, 377 (2005) (Ginsburg, J., dissenting) (the Supreme Court has "also recognized that incautious reading of the statute could dramatically expand the reach of federal criminal law, and we have refused to apply the proscription exorbitantly"). "Not all conduct that strikes a court [or the public] as sharp dealing or unethical conduct is a 'scheme or artifice to defraud.'" *United States v. Colton*, 231 F.3d 890, 901 (4th Cir. 2000). In other words, the mail and wire fraud statutes "do not cover all behavior which strays from the ideal"; they serve to punish crimes, not regulate business morality. *Id.*

This Court has drawn "a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do *not* violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *Shellef*, 507 F.3d at 108 (emphasis added). As this Court has held, "[f]raud requires more than deceit. A person can dissemble about many things, but a lie can support a fraud conviction only if it is material, that is, if it would affect a reasonable person's evaluation of a proposal." *United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013); *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (similar); *see also United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) ("Materiality cannot be proven by the mistaken beliefs of the worst informed trader in a market.").

In particular, this Court has previously held that knowingly making false representations to secure sales does not evidence fraudulent intent if the misrepresentation is to engender trust, thereby making it more likely for a sale to be made. *See United States v. Regent Off. Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970). In *Regent*, sales personnel falsely claimed that they had been referred by a friend of the consumer (or by a similar firm) to engender the trust of customers and induce sales for office supplies. *Id*. at 1176. However, consumers would ultimately receive the office supplies purchased. *Id*. at 1176-77. In other words, even though

there was some dishonesty in the inducement, it did not deprive the purchaser of the benefit of their bargain presented; therefore, the dishonesty did not amount to criminal fraud. *Id.* at 1179 ("Does solicitation of a purchase by means of false representations not directed to the quality, adequacy, or price of goods to be sold, or otherwise to the nature of the bargain, constitute a 'scheme to defraud' or 'obtaining money by false pretenses' within the prohibition of 18 U.S.C. § 1341? We hold that, as here presented, it does not and the convictions should be reversed."). In sum, misrepresentations designed to engender trust are not material because such deceptions do not speak to "the quality, adequacy, or price of goods to be sold, or otherwise to the nature of the bargain presented." *Id.*

Here, much like the false introductions used by Regent Office Supply, Mr. Novis' business utilized false introductions to the recipients of his mailers to engender trust. Specifically, the Government claims that Mr. Novis induced recipients to pay his company money: (1) personalizing the mailings to the individuals, (2) using official looking stamps, graphics, and seals on the mailings; (3) using trade names or fake, but official sounding business names on the mailings; (4) using names and titles for officers and representatives who did not exist in the mailings; and (3) using post office boxes to send and receive the mailings. (Tr. 27-30, 213-22, 230-48, 745-46, 765, 775, 779, 785-86, 793; Exs. 118A 119, 121, 121A, 125-27, 129-37; ECF 33 at 3). However, the evidence presented shows that these

facts were not material to the bargain presented and instead were intended to engender recipient trust. (Tr. 559 (testimony by a government witness mailing recipient that the names used on the mailings did not matter to her or her husband), 567 (testimony that it did not matter what the mail said—sweepstakes, opportunity, gift—he would send money regardless)). Moreover, the record does not support, as the Government contends, that the bargain presented was a large cash prize in exchange for a processing fee. (Tr. 136-138, 645-76, 1155-69). Rather, the evidence at trial showed that the bargain presented was a curated booklet of available sweepstakes the recipient could enter, if they chose, to win prizes or money, collectively valued at a certain amount, in exchange for a fee. (Tr. 246-47, 261-62, 533-35). How Mr. Novis decided to introduce that offer to recipients is simply immaterial to the "nature of the bargain" itself, and therefore is not evidence of a scheme to defraud under 18 U.S.C. § 1341 or 18 U.S.C. § 1343.

ii.  *The Record Does Not Support That Mr. Novis Intended To Harm Recipients.*

A scheme to defraud cannot exist, even if deception is present within the business, if the defendant did not intend to harm the victim by depriving them of their money or property. *See United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994) (holding that the government failed to produce legally sufficient evidence of criminal intent); *see also* Justice Manual § 949 ("Because the defendant must intend to harm the fraud's victims, 'misrepresentations amounting only to deceit are

insufficient to maintain a mail or wire fraud prosecution.'") (citing *D'Amato*, 39 F.3d at 1257). Thus, mail and wire fraud charges "can not apply to situations where the alleged victims 'received exactly what they paid for' and 'there was no discrepancy between benefits reasonably anticipated and actual benefits received.'" *Shellef*, 507 F.3d at 108.

In *United States v. Starr*, 816 F.2d 94, 95 (2d Cir. 1987), the defendants were alleged to have engaged in a scheme to defraud customers of their so called "lettershoppe" business, by means of "burying" higher rate mailings in lower rate bulk mailings and failing either to pay the postal service the correct postage due or to refund the excess funds to their customers. *Starr*, 816 F.2d at 95. This Court vacated the defendants' convictions and held that:

> the evidence does not identify what harm, if any, the Starrs intended to inflict on their customers. In fact, proof offered on this element is quite to the contrary. The Starrs did in fact mail their customers' brochures promptly as promised and caused them to arrive at the correct destination. The agreement for the timely shipment and handling of bulk mail was the basis of the bargain between the Starrs and their customers.

*Id*. at 99. The fact that the defendants in *Starr* had misappropriated funds paid to them to cover postage fees, while deceitful "had no relevance to the object of the contract." *Id.* at 100. As this Court later observed, "[w]hile the *Starr* case featured plenty of mail, and plenty of fraud, we held that there was no statutory mail fraud because the government failed to prove that the defendants intended to harm their

victims. The clients got what they bargained for: their packages were delivered to the proper places, at the proper times, for the agreed-upon prices. Thus, the defendants' scheme neither harmed nor contemplated any harm to their clients." *United States v. Walker*, 191 F.3d 326, 335 (2d Cir. 1999).

Here, as in *Starr* and *Shellef*, there was no discrepancy between benefits reasonably anticipated and actual benefits received, and therefore there was no intent to inflict cognizable harm or contemplated harm to mailing recipients. The mailers offered to provide the recipients with booklets detailing opportunities to enter into sweepstakes. The Indictment alleges, and the evidence corroborates, that the mailers at issue in this case "included language indicating that the recipients had not won any money or prizes and/or that the mailings were not prize notifications or sweepstakes entry forms." (ECF 33, ¶¶ 7, 14). For example, the mailers generally contained the following language on the front: "This is not a lottery/awards notification or sweepstakes entry form. You have not yet won." (Ex. 142 at 2; *see also*, *e.g.*, Exs. 118, 119, 121, 132, 134, 135, 136 (similar language)). Likewise, the mailings contained a disclaimer on the back that reads:

> [This entity] is a research and reporting service. We specialize in researching sweepstakes sponsored and conducted by corporate organization[s] with which [the Entity] is completely unaffiliated. We compile these sweepstakes into a newsletter which sets forth all no purchase entry requirements . . . You have not won any money or prize. . . . [We are] not a lottery company, and does not offer lottery, contest or sweepstakes entries. . . . Responders will be refunded their purchase price of our report in full if they are dissatisfied with the report.

(Ex. 142 at 1; s*ee also*, *e.g.*, Exs. 100. 121, 127, 131-36). The backer concludes, "This communication is not a sweepstakes or award notification and does not guarantee that you will win any sweepstakes . . . You do not need to purchase the Report to enter any sweepstakes." (Ex. 142 at 1).

The largest and clearest text in the mailer makes clear what was being offered: a report of available sweepstakes the recipient could enter, if they so chose, for the chance to win free money and prizes. In fact, the Government's own evidence demonstrated that recipients knew that they were purchasing a "report." (Tr. 569, 1305-07). Thus, at the end of the day, the recipients, just like the customers in the *Starr* case, received what they bargained for, a booklet for a small fee (and if dissatisfied, a refund). As such, the evidence presented at trial did not prove that Mr. Novis intended to harm others or that the necessary result of his actions was to injure others. *D'Amato*, 39 F.3d at 1257. Without this element, there is no mail fraud. *Id.* at 1259-60 (holding the government's evidence that the defendant intended to injure others was not legally sufficient).

A violation of federal mail and wire fraud requires more than font sizes and emblems. Mr. Novis made money selling sweepstakes reports through the mail; however, the evidence does not support a mail or wire fraud conviction because the Government introduced no evidence that a reasonable jury could rely upon to conclude Mr. Novis developed the intent, let alone an actual scheme, to defraud.

Accordingly, his conviction cannot be upheld.

**III.**     **This Court Should Reverse Mr. Novis' Conviction Due To The District Court's Erroneous Admission Of Harmful Hearsay Evidence, Including In Violation Of The Confrontation Clause.**

    **A.**     **Standard Of Review.**

This Court generally reviews evidentiary rulings for abuse of discretion, but whether a statement is hearsay is a question of law reviewed *de novo*, *United States v. Ferguson*, 676 F.3d 260, 286 (2d Cir. 2011), as are claims that the admission of out-of-court testimony violated the Confrontation Clause. *United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004). Because defense counsel preserved the evidentiary issues raised here by objecting below,[16] they are subject to harmless error analysis. Non-constitutional errors are only harmless if this Court can be "sure that the error did not influence the jury or had but very slight effect." *United States v. Cummings*, 858 F.3d 763, 774 (2d Cir. 2017). For constitutional errors, the Government bears the burden of proving "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *McClain*, 377 F.3d at 222.

---

[16] Although defense counsel did not expressly raise the Sixth Amendment or Confrontation Clause at trial, he sufficiently put the District Court on notice of such concerns by objecting to their admission, arguing Mr. Novis would not have the opportunity to cross-examine the hearsay witnesses. *See United States v. Lee*, 549 F.3d 84, 89 (2d Cir. 2008). In fact, the District Court recognized as much. (Tr. 1139-40).

**B.    The District Court Committed Harmful Error When It Misapplied Federal Rule Of Evidence 803(3) To Allow The Government To Elicit Hearsay Testimony About Recipients' Beliefs Regarding The Mailings.**

The District Court committed harmful, reversible error when it allowed the Government to elicit hearsay testimony from relatives of mailing recipients about the recipients' beliefs regarding the mailings. The District Court erroneously held that the testimony was admissible under Federal Rule of Evidence 803(3) because it concerned the recipients' "state of mind." (ECF 63 at 1).

Federal Rule of Evidence 803(3) sets forth an exception to the rule against hearsay where the statement is admitted to show "the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)." Fed. R. Evid. 803(3). The Rule goes on to provide, however, that "a statement of *memory or belief* to prove the fact remembered or believed" may not be admitted under this hearsay exception "unless it relates to the validity or terms of the declarant's will." *Id.* (emphasis added).

In *Shepard v. United States*, for example, the Supreme Court held inadmissible the hearsay statement of the defendant's wife that "Dr. Shepard has poisoned me" because the government in that case "did not use the declarations by Mrs. Shepard to prove her present thoughts or feelings, or even her thoughts or feelings in the past." 290 U.S. 96, 104 (1933). Instead, the declarations were used as "proof of an act committed by someone else as evidence that she was dying of poison

given by her husband." *Id.* The Court reasoned that "[t]he testimony now questioned faced backward and not forward . . . even more important, it spoke to a past act, and even more than that, to an act by some one not the speaker." *Id.* at 104, 106. The "risk of confusion [was] so great," that the evidence could not be admitted. *Id.* at 104.

This Court ruled similarly in *United States v. Lawal*, 736 F.2d 5 (2d Cir. 1984). There, this Court held that "to the extent that the declarations excluded by the trial court's rulings were not statements exhibiting Lawal's then existing state of mind, but were instead statements of what he or someone else had done in the past, they would be properly excludable as inadmissible hearsay not within the terms of Rule 803(3)." *Id.* at 8 (citations omitted).

Here, the Government did not hide its intent to introduce hearsay evidence for a broader purpose than permitted under Rule 803(3). Section V.f. of the Government's Trial Brief argues, "[t]he Government may present victim testimony in mail fraud cases . . . to show that the defendant's mailing had the intended effect on the victim, i.e., that they were defrauded, and otherwise served as circumstantial evidence from which a jury could infer the defendant's intent." (ECF 51 at 26). In addition, in the very same section—which the Government entitled, "[v]ictim-relative testimony concerning victims' beliefs"—the Government stated it intended to elicit virtually the same testimony from mailing recipients' family members as

well. (*Id.* at 26-27 (explaining the Government's intent to elicit statements "regarding [the victim's] statements of belief concerning the prize notices" to demonstrate "the victims' beliefs in having won a large cash prize")).

At trial, the Government did precisely what Federal Rule of Evidence 803(3) prohibits—it introduced the relatives' testimony as evidence of "fact" the recipient believed (i.e., that they had won a large cash prize). (Tr. 316-17, 323 (testimony by Ann Rivenberg that her father "thought" he had won "the lottery"), 461-63 (testimony by Ashley Seip that her grandfather "believed" he had won money), 340-42 (testimony by Sharon Soltis that her father told her that he "belie[ved]" "[h]e was going to win"). The Government knew this hearsay evidence was crucial to its case against Mr. Novis, as evidenced by its use of it at the beginning and end of trial in support of their argument that Mr. Novis had intent to defraud. (Tr. 22-23 (previewing testimony by Rivenberg that her father, Harry Ranker, believed he had "prize winnings" and stating that Mr. Novis used the prize notices to "trick[]" people like Ranker into believing they would receive "a large cash prize), 1639 (summarizing testimony from Rivenberg, Seip, and Soltis stating their relatives each believed they "won a large cash prize" or "lots of money"), 1641 ("The fraud is deceiving people into believing that all of these prize notices come from different places"), 1657 ("They believed, and you're taking their money. That's intent to defraud."). The Government's reliance on this testimony in this manner

demonstrates that the sole relevance of the testimony, if any, was for the truth of the matter asserted "to provide an inference of the happening of the event that produced the state of mind"—i.e., that recipients were deceived into believing they won cash prizes because Mr. Novis intended for them to be deceived. *See United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991) (affirming exclusion of letter that fell within the carve out of Rule 803(3)). This sort of use of an out-of-court statement is expressly excluded from Rule 803(3). Thus, the Court erred in allowing the Government to introduce this testimony, which is not admissible under any other hearsay exception. Significantly, Mr. Novis was precluded from cross-examining four of the six individuals who claimed they were misled by his mailings since the prosecution chose to introduce this testimony through relatives instead of the declarants themselves.

The District Court's error in admitting the hearsay statements was not harmless because the jury was most likely influenced by the mistake, including because: (1) the statements bore on the most important issue in the case: whether Mr. Novis had the requisite intent to defraud; (2) the Government's other evidence regarding Mr. Novis intent was not strong (*see supra* at 38-46); (3) the Government relied heavily on the improperly admitted hearsay statements during its opening statement and closing arguments as substantive proof of Mr. Novis' intent to defraud; and (4) the evidence was more corroborative than cumulative. *See United*

*States v. Gomez*, 617 F.3d 88, 95 (2d Cir. 2010) (setting forth similar factors). Thus, the hearsay statements created a "grave risk" that the jury would use them as evidence of Mr. Novis' intent to defraud. This risk was heightened by the fact that the declarants were not available for cross-examination and because the District Court failed to provide the jury with a limiting instruction. *See Cummings*, 858 F.3d at 766–67 (vacating conviction and remanding for a new trial).

Under these circumstances, the Court cannot be "sure" that the hearsay statements did not influence the jury's verdict. *See United States v. Rigas*, 490 F.3d 208, 222 (2d Cir. 2007) ("Where the erroneously admitted evidence goes to the heart of the case against the defendant, and the other evidence against the defendant is weak, we cannot conclude that the evidence was unimportant or was not a substantial factor in the jury's verdict."). Accordingly, Mr. Novis' conviction should be reversed.

### C. The District Court Committed Harmful Error When It Permitted The Government To Introduce Letters And Complaints In Violation Of The Confrontation Clause.

The District Court committed harmful, reversible error when it admitted hearsay letters and consumer complaints, including to attorneys general, authored by witnesses not available for cross-examination concerning Mr. Novis' mailings. The Government proffered, and the District Court erroneously accepted, that these documents were not being offered for the truth of the matters asserted therein, but to

show that Defendants were on notice that mailing recipients were misled by their mailings. (ECF 63 at 3; *see* Tr. 221, 1240). But several of the documents admitted *did not pertain to Defendants' business at all*, and instead related to other, unaffiliated direct mailing businesses. (Ex. 381; Tr. 1218-30). That customers were making complaints regarding other mailing companies is completely immaterial to Defendants' notice, and the District Court's admission of these mailings was substantially more prejudicial than probative.[17] While the District Court did provide limiting instructions directing the jury to consider the letters and complaints only for the purpose of notice (Tr. 1139-40, 1179-80, 1253), the District Court failed to include any such instruction in its final charge to the jury or in any supplemental charge, and failed to provide any instruction distinguishing between those documents related to Defendants' business and those unrelated to it.

Additionally, the admission of the consumer complaints and letters to attorneys' general violated the Confrontation Clause. The Sixth Amendment guarantees the accused the right "to be confronted with witnesses against him." U.S. Const. Amend. VI. Accordingly, out-of-court statements by witnesses that are

---

[17] If Government's true purpose for admitting the letters and complaints was merely to show that the complaints were in fact made and that Defendants were aware of them, the Government could have simply admitted evidence establishing that complaints were made without admitting the contents of the complaints. At trial, defense counsel offered to allow the Government to elicit evidence complaints were filed in lieu of the hearsay complaints themselves, but the District Court declined. (Tr. 1219-20).

"testimonial" cannot be offered in a criminal trial unless the defendant has an opportunity to confront the witness. *Crawford v. Washington*, 541 U.S. 36 (2004). The *Crawford* opinion identified a "core class of 'testimonial' statements" that are inadmissible unless the defendant has the opportunity to confront the declarant, including "statements that were made under circumstances which would lead an objective witness to believe that the statement would be available for use at a later trial." *Id.* at 51-52. The consumer complaints and letters to attorneys' general were testimonial in nature because they constitute a formal statement to a government officer. *See Crawford*, 541 U.S. at 51 ("An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."). Accordingly, Mr. Novis had a constitutional right to confront the authors of the complaints and letters but was deprived of that right at trial.

Given that the Government spent hours of testimony admitting these hearsay documents (Tr. 473, 678-88, 1023, 1111-29, 1198-1274) and relied heavily on them in their opening statement (Tr. 66) and closing argument (Tr. 1649, 1842), the Government cannot bear their burden of proving "beyond a reasonable doubt" that the District Court's erroneous admission of these documents in violation of the Confrontation Clause "did not contribute to the verdict obtained." *McClain*, 377 F.3d at 222. These errors, especially when considered cumulatively with the other hearsay

errors set forth at pages 47-52, *supra*, warrant reversal of Mr. Novis' convictions.

## IV. This Court Should Reverse Mr. Novis' Conviction Because The Evidence Presented At Trial Was Insufficient To Prove That He Aided And Abetted Mail Fraud.

### A. Standard Of Review.

This Court reviews challenges to the sufficiency of the evidence *de novo*. *See supra* at 38-39. A conviction "based on speculation and surmise alone cannot stand." *D'Amato*, 39 F.3 1256; *United States v. Wiley*, 846 F.2d 150, 155 (2d Cir. 1988) ("[A] general suspicion or knowledge [of illegality is] . . . not enough" for a jury to convict.").

### B. The Government Failed To Prove Mr. Novis Had The Intent Necessary To Sustain An Aiding And Abetting Conviction.

As the District Court charged the jury, to establish aiding and abetting liability, the Government was required to prove Mr. Novis knowingly and willfully participated in a scheme or artifice to defraud, with knowledge of its fraudulent nature and with the specific intent to defraud. (Tr. 1903). *See United States v. Litwok*, 678 F.3d 208, 213 (2d Cir. 2012). Importantly, "aiding and abetting requires intent extending to the whole crime." *Rosemond*, 572 U.S. at 76-77. That is, the defendant must not just associate himself with the venture, "but also participate in it as something that he wishes to bring about and seek by his actions to make it succeed." *Id.* (internal quotations omitted). This "intent requirement [is] satisfied when a person actively participates in a criminal venture ***with full knowledge*** of the

55

circumstances constituting the charged offense." *Id.* (emphasis added).

Taken in the light most favorable to the Government, the evidence presented a trial demonstrated, at most, that Defendants shared customer lists, and permitted third parties to utilize company staff for ministerial tasks. But there is no evidence that Mr. Novis even saw the mailings that are the subject of the aiding and abetting counts. In fact, Mr. Novis' former employees called by the Government testified that neither they nor Mr. Novis reviewed or edited the content of the mailings for the third parties. (Tr. 271-72, 692-93; *see also* ECF 128 at 58 (denying Rule 29 motion, but acknowledging the lack of direct evidence that Novis saw the third party promotions). Even if Mr. Novis had seen the mailings at issue in the aiding and abetting counts, given the legal advice that Mr. Novis was receiving about his own mailings and that all the third-party mailings were scrutinized by PacNet's legal department, he had no basis to believe that such mailings were illegal. (Tr. 296-97, 630, 1433).

In the absence of evidence establishing that Mr. Novis even saw the promotions in question, or knew that such mailings were illegal, the Government failed to prove that Mr. Novis had the requisite intent for an aiding and abetting conviction. *See Rosemond*, 572 U.S. at 77 (requiring proof the defendant had "full knowledge" of the circumstances constituting the charged offense to satisfy the intent requirement for aiding and abetting).

## V.  <u>Mr. Novis Joins In Certain Of Denkberg's Arguments.</u>

Pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure, to the extent they are not inconsistent with the arguments raised herein, Mr. Novis joins in Denkberg's arguments regarding (1) the District Court's erroneous supplemental instruction; (2) the legal sufficiency of the evidence, except for Denkberg's argument regarding the aiding and abetting charge; and (3) the District Court's erroneous preclusion of the presentation of exculpatory evidence.

## <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, Defendant-Appellant Sean Novis requests that this Court reverse his convictions on all counts and direct they be dismissed or that a judgment of acquittal be entered. Alternatively, Mr. Novis requests that this Court reverse on all counts and remand for a new trial.

Dated: February 12, 2024

/s/ Luke Cass
WOMBLE BOND DICKINSON (US) LLP
Luke V. Cass
Michael E. Clark
Jasmine G. Chalashtori
2001 K Street, NW
Washington, D.C. 20006
Tel: (202) 467-6900
luke.cass@wbd-us.com
michael.clark@wbd-us.com
jasmine.chalashtori@wbd-us.com
*Attorneys for Defendant-Appellant Sean Novis*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,931 words.

Dated: February 12, 2024

/s/ Luke Cass
Luke V. Cass

58