23-6877-cr
*United States v. Novis (Denkberg)*

# In the
# United States Court of Appeals
# for the Second Circuit

————

AUGUST TERM 2024

Nos. 23-6877 (L), 23-6925 (CON)

UNITED STATES OF AMERICA,
*Appellee,*

v.

GARY DENKBERG, SEAN NOVIS
*Defendants-Appellants.*

————

On Appeal from the United States District Court for the Eastern
District of New York

————

ARGUED: JANUARY 14, 2025
DECIDED: JUNE 2, 2025

————

Before: CABRANES, RAGGI, and KAHN, *Circuit Judges.*

————

Defendants Gary Denkberg and Sean Novis (together, "Defendants") appeal their judgments of conviction, entered on August 3, 2023, after a jury trial in the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*). Denkberg and Novis were convicted of multiple counts of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, use of fictitious names and titles in violation of 18 U.S.C. § 1342, and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341.

On appeal, Denkberg and Novis principally argue that there was insufficient evidence to support their convictions, the District Court erred when issuing supplemental jury instructions, and the District Court made several evidentiary errors.

We hold that (1) sufficient evidence supported Defendants' convictions, including evidence from which a reasonable jury could find that Defendants possessed the requisite intent to defraud, notwithstanding evidence that they relied on the advice of counsel; (2) the District Court's supplemental jury instructions were not in error; (3) the admitted testimony from the victims' family members and letters from state attorneys general were not hearsay; (4) Defendants failed to preserve their argument that the admission of the letters from the state attorneys general violated the Confrontation

2

Clause and, upon review, the admission of those letters did not amount to plain error; and (5) the District Court did not abuse its discretion by prohibiting defense counsel from introducing evidence as a sanction for defense counsel's failure to abide by the District Court's protective order.

The District Court's judgments of conviction of August 3, 2023 are **AFFIRMED**.

———————

AMANDA L. MUNDELL, Attorney, Appellate Division, Criminal Division (Lisa H. Miller, Deputy Assistant Attorney General, Criminal Division; Amanda N. Liskamm, Joseph M. Williams, Charles B. Dunn, Carolyn F. Rice, Trial Attorneys, Consumer Protection Branch, Civil Division *on the brief*), *for* Nicole M. Argentieri, Principal Deputy Assistant Attorney General, U.S. Department of Justice, Washington, D.C., *for Appellee*.

MATTHEW W. BRISSENDEN, Matthew W. Brissenden P.C., Garden City, NY, *for Defendant-Appellant Gary Denkberg*.

LUKE CASS, Womble Bond Dickinson (US) LLP, Washington, D.C. (Michael E. Clark, Jasmine G. Chalashtori, Womble Bond

3

Dickinson (US) LLP, Washington D.C.; Jim Druker, Kase & Druker, Garden City, NY, *on the brief*), *for Defendant-Appellant Sean Novis*.

———————

JOSÉ A. CABRANES, *Circuit Judge*:

Defendants Gary Denkberg and Sean Novis (together, "Defendants") appeal their judgments of conviction, entered on August 3, 2023, after a jury trial in the United States District Court for the Eastern District of New York (Joan M. Azrack, *Judge*). Denkberg and Novis were convicted of multiple counts of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, use of fictitious names and titles in violation of 18 U.S.C. § 1342, and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341.

On appeal, Denkberg and Novis principally argue that there was insufficient evidence to support their convictions, the District Court erred when issuing supplemental jury instructions, and the District Court made several evidentiary errors.

We hold that (1) sufficient evidence supported Defendants' convictions, including evidence from which a reasonable jury could find that Defendants possessed the requisite intent to defraud, notwithstanding evidence that they relied on the advice of counsel; (2)

the District Court's supplemental jury instructions were not in error; (3) the admitted testimony from the victims' family members and letters from state attorneys general were not hearsay; (4) Defendants failed to preserve their argument that the admission of the letters from the state attorneys general violated the Confrontation Clause and, upon review, the admission of those letters did not amount to plain error; and (5) the District Court did not abuse its discretion by prohibiting defense counsel from introducing evidence as a sanction for defense counsel's failure to abide by the District Court's protective order.

Accordingly, we **AFFIRM** the District Court's August 3, 2023, judgments of conviction.

Additionally, identifying potential professional misconduct by the attorneys who advised Defendants over the course of their fraudulent scheme, we direct the Clerk of Court to forward our opinion—and the record below—to the relevant New York State disciplinary authorities.

## I. BACKGROUND[1]

In 2003, Novis owned and operated a direct-mailing operation in Long Island, New York. Denkberg joined the operation in 2004 and served as Novis's partner. Working together over more than a decade, Denkberg and Novis engaged in a mass-mailing fraud scheme in which they sent hundreds of thousands of fake "prize notices" to American consumers that were designed to give recipients the impression that they had won a large cash prize—typically in excess of one million dollars. To claim their prize, the elaborately designed notices instructed recipients that they needed only to pay a small processing fee, typically between $20 and $40. And so they did. From 2004 until September 2016, Denkberg and Novis's operation generated

---

[1] Unless otherwise noted, the following facts are drawn from the evidence presented at trial and described in the light most favorable to the Government. *See United States v. Lyle*, 919 F.3d 716, 722 (2d Cir. 2019) ("Because [Defendants] appeal convictions following a jury trial, we view the evidence 'in the light most favorable to the government, crediting any inferences that the jury might have drawn in its favor.'" (quoting *United States v. Rosemond*, 841 F.3d 95, 99-100 (2d Cir. 2016)). *See generally Musacchio v. United States*, 577 U.S. 237, 243 (2016).

approximately $80 million dollars of revenue from over three million transactions.[2]

However, those who paid the fee (hereafter, "the victims"), did not receive the advertised cash prize. Instead, victims received a "sweepstakes report"—a thin booklet with publicly available information that described third-party sweepstakes that they could enter to win cash prizes.[3]

To effectuate their scheme, Denkberg and Novis went to great lengths to construct convoluted prize notices for the purpose of deceiving their victims. The notices were personalized to the recipients based on identifying information gathered from "list brokers," affixed with official-looking seals, rubber stamps, and hand drawn signatures produced by a hired artist, and designed to appear as though they had been sent from seemingly official, but fictitious, organizations and officials.[4] Using large, bold, and capitalized font, some of the notices appeared to alert the victims that they were a "SELECTED WINNER-

---

[2] In addition, Denkberg and Novis provided victims' information to other fraudsters, resulting in an additional $13 million victim loss across over five hundred thousand transactions. *See* JA.2068.

[3] JA.917-18, 977. *See also* JA.1739-46.

[4] JA.916; JA.1069, 1075, 1078; JA.1516, 1530.

PAY GUARANTEED" and that their prize was "AVAILABLE and GUARANTEED to you."[5] Some of the notices were crafted to look like checks, financial statements, stock certificates, and other official documents.

Buried beneath, alongside, or on the backside of their notices, often in small text and incoherent legalese, Denkberg and Novis included "disclaimers" that the victims had not actually won a cash prize but instead had merely received an "opportunity" to purchase a "sweepstakes report."[6]

Those across the country defrauded by Denkberg and Novis mailed the requested fees to Defendants in the form of cash or a check. Defendants collected the cash and sent the checks to a third-party payment processor in Canada. The payment processor then deposited the checks and wired the proceeds to Defendants' business bank accounts in New York. Meanwhile, Defendants recorded and identified ("flagged") the victims who had sent them the requested fees, and then proceeded to send these victims even more fake notices under the names of other fake companies and fake officials.[7]

---

[5] JA.1530, 1532.

[6] JA.747-751.

[7] JA.915, 1172–76; *see, e.g.,* JA.1732.

Complaints from victims and state attorneys general revealed that many of Denkberg and Novis's victims were elderly or infirm.[8]

Over the course of their approximately twelve-year fraudulent scheme, Denkberg and Novis were primarily represented by the solo practitioner Charles Chernofsky, by father and son attorneys Sheldon Lustigman and Andrew Lustigman of the Lustigman firm, and, after the Lustigman firm merged with Olshan Frome Wolosky ("Olshan") in 2011, by Adam Soloman too.[9] Throughout the course of Defendants' fraudulent scheme, their attorneys offered advice on "compliance with the generally accepted principles governing advertising."[10] In email correspondence with Defendants, the attorneys claimed that Defendants' mailings would be reviewed under a "Reasonable Consumer Standard."[11] These attorneys overwhelmingly approved Defendants' fraudulent notices, sometimes providing minimal edits, which were often, but not always, incorporated into the notices by Defendants.

---

[8] JA.1029, 2024–26, 1159–65.

[9] JA.844–52, 1501–03.

[10] JA.264, 1149.

[11] JA.264.

In response to complaints from victims that they had not received their promised prizes, Denkberg and Novis would send victims disclaimer letters that they had not, in fact, won a sweepstakes and instead "misunderstood the sales promotion that we sent to you."[12]

Over time, the fact that Defendants received a high volume of repeat payments from elderly customers caught the attention of their Canadian payment processor, who, in March 2008, warned Defendants by email of the "significant regulatory risk" their scheme posed.[13] And eventually, in 2012, the U.S. Postal Service ("USPS") brought two administrative actions against Defendants that culminated in signed cease-and-desist agreements and a $5,000 fine.[14]

Despite signing the cease-and-desist agreements, agreeing to discontinue and abandon "such promotional activities and representations for obtaining money or property through the mails," Denkberg and Novis resumed such activities almost immediately, forming new shell companies with nearly identical prize notices.[15]

---

[12] JA.2060; JA.1034. Defendants would send a refund to their victims for the fee if requested. JA.1033.

[13] JA.1981; 1053-55.

[14] JA.1388-1414, 1450.

[15] JA.1399.

Defendants' lawyers continued to review these notices, purportedly under a "reasonable consumer" standard applicable to civil advertising law, offering only minor revisions, often with the disclaimer in their email opinions that "there can be no assurance that the Postal Service or other regulator might not view the matter differently, but we think that your position would be legally defensible with the copy as revised."[16]

Additionally, in 2015 and 2016, while simultaneously running their own fraudulent scheme, Denkberg and Novis shared employees and lists of victims with three other individuals, who ran similar prize notice schemes: Shawn Phillips, Philip Priolo, and Jeffrey Novis.

In September 2016, Defendants' fraudulent scheme ended when, in a civil anti-fraud action, they stipulated to an injunction under 18 U.S.C. § 1345 prohibiting them and their business entities from, *inter alia*, distributing prize notices.[17]

---

[16] JA.713, 783.

[17] *See* JA.1204. Finding "probable cause to believe" that Denkberg and Novis were "violating and/or were about to violate [the mail fraud statute] 18 U.S.C. § 1341," the District Court enjoined Defendants pursuant to 18 U.S.C. § 1345. *United States v. Sean Novis, et al.*, No. 16-cv-5263, ECF No. 35 at 1-6 (E.D.N.Y. Feb. 23, 2017). 18 U.S.C. § 1345 provides, in relevant part, that "the Attorney General may commence a civil action in any Federal court to enjoin such violation."

In August 2020, the Government sought an initial criminal indictment against Denkberg and Novis, followed by a superseding indictment a year later.[18] On August 25, 2021, a federal grand jury sitting in the Eastern District of New York returned the 19-count superseding indictment charging Denkberg and Novis with conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349 (Count One); six counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts Two through Seven); four counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts Eight through Eleven); four counts use of fictitious names and titles in violation of 18 U.S.C. § 1342 (Counts Twelve through Fifteen); and four counts of aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341 (Counts Sixteen through Nineteen).[19]

---

[18] JA.26; JA.38.

[19] JA.42-48, 201-07. 18 U.S.C. § 1349 provides, in relevant part

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. § 1341 provides, in relevant part

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or

Trial began before Judge Azrack on April 26, 2022. On May 17, 2022, after a three-week trial, the jury acquitted Denkberg on two counts of mail fraud (Counts Six and Seven), two counts of wire fraud (Counts Eight and Nine), and two counts of fraud using fictitious names (Counts Thirteen and Fifteen), and found him guilty on all 13 remaining counts. The jury convicted Novis on all 19 counts.

---

other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343 provides, in relevant part

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 2 provides, in relevant part

Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

The District Court sentenced Denkberg to 66 months of imprisonment to be followed by two years of supervised release and further ordered Denkberg to pay a $250,000 fine and $19,020,552 in forfeiture. It sentenced Novis to 90 months of imprisonment, to be followed by two years of supervised release and further ordered Novis to pay a $500,000 fine and $60,503,668 in forfeiture.

This timely appeal followed.

## II. DISCUSSION

### 1. Sufficiency of the Evidence

Denkberg and Novis challenge that the evidence presented at trial was sufficient to prove that they conspired to commit mail fraud, committed mail and wire fraud, and used fictitious names in the course of committing mail fraud. Relevant to these convictions, they argue that the Government failed to provide sufficient evidence to prove a scheme to defraud, an element common to 18 U.S.C. §§ 1341, 1342, 1343, and 1349. Such a scheme requires proof both that "the defendant[s] acted with fraudulent intent" and that any "misrepresentations were material."[20] In addition, Denkberg and

---

[20] *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (citations omitted).

Novis also challenge that a rational juror could find they aided and abetted mail fraud.

When preserved, we review sufficiency of the evidence challenges *de novo*.[21] When hearing a sufficiency challenge on appeal, we make a "limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt 'beyond a reasonable doubt.'"[22] As the Supreme Court has repeatedly instructed, "[a]ll that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all."[23] Accordingly, "we must sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[21] S*ee United States v. Pierce*, 785 F.3d 832, 837 (2d Cir. 2015).

[22] *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Jackson v. Virginia*, 443 U.S. 307, 314–15 (1979)).

[23] *Id.* at 244 (quoting *Jackson*, 443 U.S. at 319).

could have found the essential elements of the crime beyond a reasonable doubt."[24]

## A. Fraudulent Intent and the Advice of Counsel

First, Denkberg and Novis argue that no rational juror could find that they possessed the requisite fraudulent intent based on the evidence presented by the Government. "Essential to [prove] a scheme to defraud is fraudulent intent."[25] Fraudulent intent may be proven through both direct and circumstantial evidence.[26] "Therefore, a jury may bring to its analysis of intent on individual counts all the circumstantial evidence it has received on the scheme and the purpose of the scheme in which the defendant allegedly participated."[27]

---

[24] *United States v. Raniere*, 55 F.4th 354, 364 (2d Cir. 2022) (quoting *United States v. Capers*, 20 F.4th 105, 113 (2d Cir. 2021)).

[25] *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). The Government "must demonstrate that the defendant had a 'conscious knowing intent to defraud and that the defendant contemplated or intended some harm to the property rights of the victim.'" *Id.* (quoting *United States v. Leonard,* 61 F.3d 1181, 1187 (5th Cir. 1995)) (ellipses and brackets omitted).

[26] *Id.* Indeed, "[a] defendant's fraudulent intent may be proven entirely through circumstantial evidence." *United States v. Romano*, 794 F.3d 317, 335 (2d Cir. 2015).

[27] *Guadagna*, 183 F.3d at 130.

16

In addition to arguing that the Government failed to provide sufficient evidence of their fraudulent intent, Denkberg and Novis argue that no rational juror could find that they possessed fraudulent intent because of the evidence Defendants introduced at trial that they had relied on the advice of counsel. Neither argument is persuasive. We consider each in turn.

### i.    Evidence of Fraudulent Intent

Viewing the record evidence in the light most favorable to the Government, there is ample evidence to support the jury's finding that Denkberg and Novis intended to defraud the recipients through their prize notices.

The jury had Defendants' elaborately-constructed prize notices—which were personalized to recipients; used fictitious names and businesses; resembled checks or financial documents; included contrived seals or signatures to make them look official; and used confusing language to obscure disclaimers—from which it could find Defendants' intent to deceive the recipients into believing they had won prizes claimable by payment of a fee. Most prize notices contained no return address, only a post office box on the return envelope, which made it difficult to ascertain who had sent the notice.

In addition to the content of the prize notices, the jury heard testimony about the victims' understanding that the prize notices entitled them to large cash prizes. The jury also heard how once Defendants learned that a victim had fallen prey to their scheme and sent the requested fee to Defendants, they targeted that same victim with even more prize notices. This tactic led their payment processor to warn Defendants that a large volume of their checks came from "multi buyers" who were "nearly always elderly."[28]

The jury also heard evidence that Defendants had received at least 32 complaints since January 2005 and were the subject of an investigation by the USPS over their prize notices, which culminated in the 2012 cease-and-desist agreement with USPS. Yet, trial testimony, including testimony from a former employee of Defendants, established that they did not meaningfully alter their prize notice scheme after signing those agreements, instead creating new shell companies under which to continue their scheme. From the totality of such evidence, a reasonable jury could conclude that the Defendants intended to defraud their victims.

**ii.    Advice of Counsel**

---

[28] JA.1981.

Despite the overwhelming evidence of Denkberg's and Novis's fraudulent intent presented by the Government, Defendants argue that no rational juror could have found that they possessed the requisite fraudulent intent because of the evidence that Defendants introduced that they had relied on the advice of counsel.

In order "to benefit from an advice-of-counsel defense, a party must show that he (1) 'honestly and in good faith' sought the advice of counsel; (2) 'fully and honestly la[id] all the facts before his counsel'; and (3) 'in good faith and honestly follow[ed]' counsel's advice, believing it to be correct and intending that his acts be lawful."[29]

Importantly, in a fraud case, an advice-of-counsel defense "is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true."[30] Instead, the evidence introduced regarding a defendant's good faith reliance on the advice of counsel, "if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'"[31]

---

[29] *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (quoting *Williamson v. United States*, 207 U.S. 425, 453 (1908)).

[30] *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017).

[31] *Id.* (quoting *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1194 (2d Cir. 1989)).

In other words, evidence introduced regarding a defendant's good faith reliance on the advice of counsel is inconclusive; it simply raises factual questions about a defendant's intent for a jury to decide.[32]

The advice-of-counsel jury instruction offered by the District Court—following model instructions endorsed by our Court in *Scully*—directed the jury to consider a wide range of factual questions that inform the ultimate question of fraudulent intent, including (but not limited to): whether Defendants "sought," "consulted" and followed the advice of counsel in good faith; whether they believed the attorney was "competent"; whether they believed such advice "to be correct"; whether they made full and accurate reports of material facts to their counsel; and whether the advice provided by their attorney was "reasonable[]."[33]

---

[32] As the Ninth Circuit has explained, "[a]dvice of counsel is not regarded as a separate and distinct defense but rather as a circumstance indicating good faith which the trier of fact is entitled to consider on the issue of fraudulent intent." *Bisno v. United States*, 299 F.2d 711, 719 (9th Cir. 1961). The Third Circuit agrees. *See United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019) (noting advice-of-counsel defense "is a species of good-faith defense," merely "negat[ing] the mental state required for the crime")

[33] JA.839. The District Court's jury instruction explained, in relevant part, that:

> A defendant relies in good faith on the advice of counsel if:
>
> 1. Before taking action, he in good faith sought the advice of an attorney whom he considered competent to advise him on the matter; and

Contrary to the arguments of Defendants, an advice-of-counsel defense does not limit the jury's considerations of good faith and criminal intent to the simple question of whether a defendant relied—without more—on legal advice. Otherwise, an individual with fraudulent intent could purposefully seek out and rely on unreasonable, incomplete, or collusively constructed "legal advice" for the purpose of establishing a pretextual defense.

Here, a rational juror could have easily found that Defendants had fraudulent intent despite the evidence introduced of their reliance on counsel. The pervasive evidence of fraudulent intent—including the elaborate construction of the prize notices, the continuance of their operation despite numerous complaints from victims and state attorneys general, the 2012 USPS agreement, and the targeting of vulnerable victims with additional prize notices—could lead a jury to

---

2. He consulted this attorney for the purpose of securing advice on the lawfulness of his possible future conduct; and

3. He made a full and accurate report to his attorney of all material facts that he knew; and

4. He then acted strictly in accordance with the advice of this attorney. He must, in good faith, honestly follow such advice, relying on it and believing it to be correct.

In determining whether the defendant acted in good faith, you may consider the reasonableness of the advice provided by the attorney.

*Id. See Scully*, 877 F.3d at 477–78.

infer that Defendants *sought* legal advice in bad faith, potentially for the *purpose* of establishing a pretextual defense.

A rational juror could also reject the claim that Denkberg and Novis relied on the legal advice in good faith and that their counsel's legal advice was "reasonable." Denkberg and Novis never consulted their attorneys for advice on criminal law, their attorneys lacked criminal legal expertise, and their attorneys' legal advice on advertising law included disclaimers that clients were not guaranteed immunity from legal repercussions. This was despite evidence that Defendants monitored enforcement actions against similar sweepstakes mailing schemes, including a May 2015 enforcement action by the Federal Trade Commission and subsequent criminal prosecutions. Such evidence permits an inference that Defendants were aware their scheme was similarly illegal. Further, in representing Defendants before the 2012 USPS administrative actions and during settlement negotiations, their attorneys continued to largely approve of the prize notice scheme after complaints from victims and state attorneys general and after Defendants signed a cease-and-desist-agreement with the USPS. This permitted an inference that Defendants did not act in good faith by continuing to rely on the advice of these same counsel.

Jurors could also doubt the testimony of Attorney Andrew Lustigman regarding the purpose and scope of his representation of Defendants. In particular, a juror could decide not to credit Lustigman's testimony that Defendants wanted to comply with the 2012 USPS settlement, and to question whether he had disclosed all relevant oral communications with Denkberg and Novis because of his own potential exposure to criminal liability. Indeed, a jury could have concluded that the legal advice Lustigman provided to Defendants was a pretext and a sham.[34]

Finally, the jury heard evidence that Defendants did not provide their attorneys with all material information. For example, Solomon testified that Defendants did not inform him about the structure of their mailing schedule designed to target the same vulnerable victims. The jury also heard evidence that Defendants did not always follow that advice, even where counsel suggested edits to fake prize notices. For example, Chernofsky advised Denkberg to remove terms such as "recipient" in June 2007, and "payment" in May 2012, but as subsequent notices received in evidence showed, Defendants continued to use such terms. Similarly, although counsel repeatedly

---

[34] The Government presented evidence from which a jury could reasonably infer that Defendants and their lawyers at Olshan discussed in oral communication material matters about the legality of Defendants' scheme that were not disclosed in email communication. *See* JA.1282.

23

warned Defendants that the disclaimer statements were insufficiently legible, evidence showed that the Defendants' copywriter "grayed out" the disclaimers in a small, light font purposely to make them difficult to read.

In sum, a rational juror could have found that Denkberg and Novis had fraudulent intent, notwithstanding evidence that they had relied on the advice of counsel.

## B. Materiality

Next, Denkberg and Novis argue that the Government failed to provide sufficient evidence that their misrepresentations were material, as required "[i]n order to prove the existence of a scheme to defraud."[35] Generally, we evaluate whether a statement is material according to whether the "misinformation or omission would naturally tend to lead or is capable of leading a reasonable [person] to change [his] conduct."[36] We have identified material

---

[35] *Weaver*, 860 F.3d at 94.

[36] *Id.* (quoting *United States v. Rybicki*, 354 F.3d 124, 145 (2d Cir. 2003) (en banc)); *see also Neder v. United States*, 527 U.S. 1, 16 (1999) ("In general, a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995))).

misrepresentations where there is a "discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver."[37]

Importantly, the purpose of the reasonable person or "ordinary prudence and comprehension standard is to assure that the defendant's conduct was calculated to deceive, not to grant permission to take advantage of the stupid or careless."[38] As such, the "reasonable person" inquiry focuses on the "violator, not the victim" and is closely related to the question of fraudulent intent.[39]

Here, the Government presented evidence that amply supports a conclusion that the elaborate fake prize notices constructed by Defendants were designed to materially misrepresent the "benefits reasonably anticipated" of the transaction and went "to the nature of the bargain itself."[40] A rational juror could find that Defendants

---

[37] *United States v. Regent Off. Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970).

[38] *United States v. Thomas*, 377 F.3d 232, 242 (2d Cir. 2004); *United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013) (holding, in mail and wire fraud context, that "defendant is liable for an objectively absurd lie if a subjectively foolish victim believes it").

[39] *Id.* at 243.

[40] *Regent Off. Supply Co.*, 421 F.2d at 1182.

specifically targeted vulnerable persons in their mailing schedule and knew that falsifying senders, official titles, and statements was "capable of leading a reasonable [person] to change [his] conduct."[41] That the victims of Denkberg and Novis may have possessed "below-average judgment or intelligence" is of no relevance to our inquiry, as to hold otherwise "would be inviting 'con men to prey on [such] people . . . who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection.'"[42]

Viewing this evidence in its totality, we conclude it was more than sufficient to permit a reasonable jury to find Defendants knew their misrepresentations would and did influence their victims, such that there is sufficient evidence that there was a scheme to defraud.[43]

---

[41] *Weaver*, 860 F.3d at 94 (quoting *Rybicki*, 354 F.3d at 145).

[42] *Thomas*, 377 F.3d at 244 (quoting *United States v. Coffman*, 94 F.3d 330, 334 (7th Cir. 1996)).

[43] For the same reasons that pertain to mail fraud, we reject Defendants' sufficiency challenge to their convictions on substantive wire fraud. Insofar as Defendants argue there is insufficient evidence supporting the interstate or foreign element of wire fraud, *see United States v. DiMassa*, 117 F.4th 477, 487 (2d Cir. 2024), that is not persuasive. The Government adduced evidence that Defendants would receive checks in the Eastern District of New York from victims across the country and send checks to a processor in Canada, which would in turn wire proceeds into Defendants' accounts in New York.

### C. Aiding and Abetting

Denkberg and Novis also challenge that there was sufficient evidence to convict them of aiding and abetting Shawn Phillips, Philip Priolo, and Jeffrey Novis in their prize notice schemes. This argument is similarly unavailing.

To prove that a defendant has aided and abetted a crime, the Government "must prove that 'the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime.'"[44] The Government does not need to prove that a defendant "kn[e]w all of the details of the [underlying] crime," so long as the evidence proved he "joined the venture, shared in it, and that his efforts contributed towards its success."[45]

Here, the Government provided direct and circumstantial evidence that would allow a rational juror to find that Defendants had aided and abetted mail fraud committed by Phillips, Priolo, and Jeffery

---

[44] *United States v. Smith*, 198 F.3d 377, 383 (2d Cir. 1999) (quoting *United States v. Pipola*, 83 F.3d 556, 562 (2d Cir. 1996)); *Medunjanin v. United States*, 99 F.4th 129, 134 (2d Cir. 2024).

[45] *United States v. Best*, 219 F.3d 192, 199–200 (2d Cir. 2000) (internal quotation marks omitted).

Novis. The Government provided evidence that Defendants shared their customer mailing lists, that Novis directed his and Denkberg's employees to work with Phillips, Priolo and Jeffrey Novis, and that Denkberg suggested edits to Phillips' prize notices, which feature fake seals, signatures, and language similar to those used by Defendants in their own scheme. Insofar as Defendants argue they had no basis to believe such third-party mailings were illegal, the jury saw an August 5, 2015 email from Sean Novis to Jeffrey Novis and Priolo, forwarding a letter from the Minnesota Attorney General enclosing a complaint from an elderly victim. This permitted the jury reasonably to infer that (1) Defendants were aware of the fraudulent nature of the Phillips, Jeffrey Novis, and Priolo's business model; and (2) intended to further the commission of that fraud.

## 2. Supplemental Jury Instructions

Denkberg and Novis argue that the District Court's supplemental jury instructions on good faith, provided in response to questions from the jury during deliberations, were erroneous because the instructions negated their advice-of-counsel defense, misled the jury regarding fraudulent intent and materiality, and failed to repeat the District Court's initial instruction on materiality.

"We review de novo a properly preserved challenge to a jury instruction, reversing where the charge, viewed as a whole, either failed to inform the jury adequately of the law or misled the jury about the correct legal rule."[46] Unpreserved challenges to jury instructions are reviewed only for plain error.[47] "In reviewing a jury instruction, we 'examine not only the specific language that the defendant challenges but also the instructions as a whole to see if the entire charge delivered a correct interpretation of the law.'"[48] For supplementary instructions in particular, "legal sufficiency . . . must be assessed in the context of the instructions as a whole."[49]

At the close of trial, the District Court gave standard jury instructions that defined "scheme to defraud," "intent to defraud,"

---

[46] *United States v. Capers*, 20 F.4th 105, 116 (2d Cir. 2021) (quoting *United States v. Binday*, 804 F.3d 558, 581–82 (2d Cir. 2015)).

[47] *See, e.g.*, *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) ("[W]e review for plain error, considering whether '(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" (quoting *United States v Nouri*, 711 F.3d 129, 138 (2d Cir. 2013)).

[48] *United States v. Al Kassar*, 660 F.3d 108, 127 (2d Cir. 2011) (quoting *United States v. Bala*, 236 F.3d 87, 94–95 (2d Cir. 2000)).

[49] *United States v. Velez*, 652 F.2d 258, 261 (2d Cir. 1981).

and materiality.[50] The District Court provided the jury with factual questions relevant to whether Defendants "relie[d] in good faith on the advice of counsel"—not as elements of an affirmative defense but as considerations bearing on the Government's burden to prove fraudulent intent.[51] The District Court clearly explained that "[t]he burden of proof is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt."[52]

During deliberations, the District Court received a note from the jury with questions. Relevant here, two of the jury's questions concerned the advice-of-counsel defense and fraudulent intent.[53] In

---

[50] JA.835–38; JA.1357–59.

[51] JA.1359.

[52] *Id.*

[53] The jury asked, in relevant part:

> (1) Can you explain further or clarify "average prudence" and can a person be purposefully misleading but not have <u>intent</u> to break the law as advise [sic] of counsel said they were within the law.

> (2) Page 21 [of the district court's instructions] the top paragraph about "scheme to defraud" having to be "calculated to deceive persons of average prudence." Does that mean that it is legal to intentionally be predatory towards vulnerable people and execute a scheme to defraud people below average prudence?

due course, the District Court provided a supplemental instruction.[54] Regarding the advice-of-counsel defense, the District Court clarified, in relevant part:

> I previously instructed you about good faith reliance on counsel. You must follow all of those instructions. A person who acts with an intent to defraud cannot also, at the same time, act in good faith. If the defendant relied in good faith on the advice of an attorney that his conduct was lawful, then he lacked an intent to defraud. However, a person who acts with an intent to defraud cannot rely on advice of counsel in good faith. And let me, of course, remind you that you should consider and follow all of my original instructions on the law from last Friday.[55]

The District Court also clarified how the "reasonable person" or "average prudence" standard bears on the issue of fraudulent intent. In its supplemental instruction, the District Court explained, in relevant part:

---

JA.196–97.

[54] JA.1378.

[55] JA.862, 1377–78 (formatting omitted).

> Proof that a defendant created a scheme to deceive reasonable people can be sufficient evidence that the defendant acted with an intent to defraud. A defendant can also act with intent to defraud if the defendant intended to deceive the ignorant or gullible. [56]

First, Denkberg and Novis object to the District Court's supplementary instruction regarding their advice-of-counsel defense. In particular, they argue that that the jury's consideration of the advice-of-counsel defense is "is limited to the defendant's good faith *reliance* on the advice *received*, not on a defendant's *state of mind* when *soliciting* that advice."[57] As a result, Defendants argue that the District Court erred in its supplemental instruction when it claimed that "a person who acts with an intent to defraud cannot rely on advice of counsel in good faith" because a defendant could have an intent to mislead but have a good faith belief in the legality of their actions.[58]

---

[56] JA.862 (formatting omitted).

[57] Novis Br. at 23 (emphasis in original).

[58] Novis Br. at 20, 23. Additionally, Denkberg argues that the "advice of counsel" supplemental instruction was especially misleading when read in combination with the supplemental instruction regarding the "average prudence" standard. Denkberg Br. at 31-32, 35. Finding neither instruction in error—whether considered in isolation or in combination—we do not agree.

The District Court's supplemental instruction, they claim, also had the effect of inappropriately shifting the Government's burden.[59]

We find no error in the District Court's supplemental instruction regarding the advice-of-counsel defense. Defendants fundamentally misunderstand the nature of the defense. As explained above, the jury was properly instructed to consider a wide range of factual questions relevant to whether Defendants relied in good faith on the advice of counsel, and ultimately whether the Government proved that Defendants had fraudulent intent.

The mere fact that Defendants relied on legal advice does not alone negate their fraudulent intent without a broader consideration of relevant questions, including (but not limited to) whether they "sought," "consulted" and followed the advice of counsel in good faith; whether they believed the attorney was "competent"; whether they believed such advice "to be correct"; whether they made full and accurate reports of material facts to their counsel; and whether the advice provided by the attorney was "reasonable[]."[60] As the Fourth

---

[59] Novis also argues that the jury instruction had the effect of inappropriately focusing the jury's attention on Defendants' "acts" and not the issue of their intent. Novis Br. at 33. We do not agree.

[60] *See ante* note 33.

Circuit explained regarding a similar fraudulent scheme over sixty years ago, to hold the fact that "defendants proceeded under advice of a lawyer" to be an "impregnable wall of defense" and not a "fact to be considered together with other facts" would be an error.[61] It "would be to say that no matter how violative of law a defendant's conduct may be, and regardless of consciousness of wrongdoing on his part and his adviser's, the advice confers immunity."[62] If a jury determines that the total sum of evidence proves that a defendant had the intent to defraud beyond a reasonable doubt, the defendant necessarily could not have relied on counsel in good faith. The District Court's instruction was not in error.[63]

Second, Denkberg (and by the incorporation of his arguments, Novis) challenges the District Court's supplemental instruction

---

[61] *Linden v. United States*, 254 F.2d 560, 568 (4th Cir. 1958).

[62] *Id.*

[63] In any event, the supplemental jury instruction twice referred to the court's original charge, of which the jury had a copy, and which Defendants do not challenge. *See* JA.1359. We have recognized that a district court usually need not repeat "original instruction[s] in the supplemental charge," where, as here, it "explicitly cautions the jury that the supplemental instruction is adjunct to, and not a substitute for, the original charge." *Velez*, 652 F.2d at 261–62; *see United States v. Daugerdas*, 837 F.3d 212, 229 (2d Cir. 2016) (explaining that "[i]n light of [district court's] explication of the good faith defense [in original charge], there was no need for him to reiterate it" in supplemental instruction).

clarifying the reasonable person or average prudence standard, arguing both that it had the effect of inappropriately weakening the advice-of-counsel defense and that the District Court failed to add an additional instruction on the issue of materiality. Because Denkberg failed to preserve his challenge to the supplemental instructions regarding the average prudence standard, his challenge on appeal is reviewed for plain error.[64]

The District Court did not err, let alone plainly err, when it clarified that "[a] defendant can also act with intent to defraud if the defendant intended to deceive the ignorant or gullible."[65] As we have earlier observed, the purpose of the reasonable person or "ordinary prudence and comprehension standard is to assure that the defendant's conduct was calculated to deceive, not to grant permission to take advantage of the stupid or careless."[66] The District Court's instruction neither misstated our law on fraudulent intent nor misled the jury by omission on the  issue of materiality. Indeed, just as "fortuitous choice of a

---

[64] For the plain error standard, *see ante* note 47.

[65] JA.862, 1378.

[66] *Thomas*, 377 F.3d at 242.

gullible victim" does not negate a defendant's fraudulent intent, it does not negate the materiality of a defendant's misrepresentations.[67]

Considered in combination with the District Court's initial and supplementary instructions (including its instruction on the advice-of-counsel defense) the District Court did not err by either commission or omission and "delivered a correct interpretation of the law."[68]

### 3. Evidentiary Challenges

We likewise dispose of Defendants' additional arguments regarding the admission and exclusion of evidence at trial.

First, none of the evidence presented by the Government "fall[s] within the definition [of hearsay] given by Rule 801(c); because it was not offered to prove the truth of the matter asserted."[69] Admitted testimony from the victims' family members that the victims believed they were winning cash prizes was introduced to show the effect the fraudulent prize notices had on the victims' state of mind—that they

---

[67] *Id.* at 243. *See also Corsey*, 723 F.3d at 374 (holding that a reasonable jury could find the defendants' misrepresentations material, regardless of whether the victims should have believed them).

[68] *United States v. Al Kassar*, 660 F.3d 108, 127 (2d Cir. 2011) (quoting *Bala*, 236 F.3d at 94–95).

[69] *United States v. Detrich*, 865 F.2d 17, 21 (2d Cir. 1988).

36

believed they had won prizes—not for the truth of the matter asserted that they had, in fact, won prizes.[70] Likewise the admission of letters from several attorneys general and accompanying complaints about the prize notices were not admitted for the truth of the matter asserted in them but instead to show Defendants' notice of the existence of complaints about their mailers and other similar schemes.[71] Moreover, Defendants failed to preserve their argument that the admission of the letters from the state attorneys general violated the Confrontation Clause.[72] Upon review, their admission by the District Court did not amount to plain error.[73]

---

[70] *See, e.g.*, JA.967, 997. *See Detrich*, 865 F.2d at 21.

[71] The District Court also gave limiting instructions regarding the evidence on three occasions. *See* JA.1169, 1179, 1197.

[72] Importantly, "a hearsay objection would not in itself preserve a Confrontation Clause claim." *United States v. Dukagjini*, 326 F.3d 45, 60 (2d Cir. 2003). The only objections to the relevant evidence in the record below were to hearsay, Rule 403, and the date of the underlying complaints. *See* JA.1156, 1159, 1160, 1169.

[73] Because Defendants' argument was not preserved, we review it for plain error. *Dukagjini*, 326 F.3d at 59 ("We conclude that the appellants failed to preserve their objection to the Confrontation Clause violation, and consequently, we evaluate the district court's admission of testimony in violation of the Confrontation Clause for plain error."). For the plain error standard, *see ante* note 47.

Even assuming *arguendo* that the evidence introduced was, in fact, testimonial and violated the Confrontation Cause, Defendants are unable to demonstrate that the error "affected the appellant[s'] substantial rights" or "seriously affects the fairness, integrity or public reputation of judicial proceedings" as the plain error standard requires.[74] At least four of the relevant letters —from the offices of the attorneys general of New York, Ohio, Maryland, and North Dakota— were admitted into evidence with defense counsel noting "no objection" or otherwise failing to object.[75] To the extent the District Court allowed additional letters from the offices of attorneys general to come in, they were cumulative to other evidence clearly establishing Defendants' knowledge that their prize notices were legally suspect and misleading to consumers, so error, if present, was harmless.[76] Further, the District Court repeatedly gave a proper curative

---

[74] *United States v. Tarbell*, 728 F.3d 122, 126 (2d Cir. 2013) (quoting *United States v. Marcus*, 560 U.S. 258, 262 (2010)).

[75] JA.1183, 1184, 1187, 1192.

[76] *See United States v. Lee*, 549 F.3d 84, 90 (2d Cir. 2008) (A Confrontation Clause violation is harmless if "the evidence would have been 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record'" (quoting *United States v. Quiroz*, 13 F.3d 505, 513 (2d Cir. 1993)).

38

instruction, indeed one with language proposed by Defendants, when the letters were admitted.[77]

Third, the District Court did not abuse its discretion when it prohibited defense counsel from introducing certain privileged emails into evidence. On November 15, 2021, the District Court entered a protective order directing a Government-appointed filter team to provide Defendants with approximately 65,000 emails obtained as part of an investigation by the USPS.[78] That order also required defense counsel to make a motion to disclose any such emails at least 21 days before trial. On May 9, 2022, two weeks after trial started and outside the 21-day notice required by the District Court's order, defense counsel notified the Government that it intended to introduce hundreds of potentially privileged emails subject to the protective order.[79] There is no dispute that defense counsel had failed to comply with the November 15, 2021 protective order. The District Court reviewed the emails *in camera* and denied Defendants' request, reasoning that defense counsel's failure to abide by the District Court's protective order amounted to "sandbagging" and that prohibiting

---

[77] JA.1197; *see id.* at 1169, 1179.

[78] JA.67.

[79] JA.1221-22.

these items from coming in as evidence was an appropriate sanction.[80] Notably, the District Court offered to sever the aiding and abetting counts to allow counsel to introduce the evidence before a separate jury, so that the documents could be reviewed in compliance with the protective order, but Denkberg's trial counsel rejected that offer.[81]

Protecting "[t]he integrity of the adversary process" and the "fair and efficient administration of justice," the District Court

---

[80] JA.1226-27, 1322; *see also* JA.800–09.

[81] *See* JA.1237. In an exchange with the District Court, defense counsel argued that the Government would not be prejudiced by his late disclosure because the Government had had the documents "for years." JA.1236. But defense counsel failed to appreciate the distinction between the role (and corresponding access to the documents) of the Government's filter (or taint) team versus the Government's trial team, where the former had prior access to the documents, but the latter did not. *See United States v. Novis*, No. 20-cr-335, ECF No. 44 (E.D.N.Y. Nov. 15, 2021) (District Court's November 2021 protective order). Part of the problem with the defense's attempted late submission was that it would have deprived the Government of the opportunity to have the filter team review the thousands of pages of records, where the selected communications were taken from, to identify related documents and rebut the evidence.

properly exercised its discretion by enforcing the notice requirement in its order.[82]

### III. CONCLUSION

To summarize, we hold as follows:

1. Sufficient evidence supported Defendants' convictions, including evidence from which a reasonable jury could find Defendants possessed the requisite intent to defraud, notwithstanding evidence that they relied on the advice of counsel.

2. The District Court's supplemental jury instructions were not in error.

3. The admitted testimony from the victims' family members and letters from state attorneys general were not hearsay.

4. Defendants failed to preserve their argument that the admission of the letters from the state attorneys general

---

[82] *Taylor v. Illinois*, 484 U.S. 400, 414–15 (1988). We also decline to exercise our discretion to consider Denkberg's ineffective assistance of counsel argument as to this issue, particularly where neither party fully briefed the factual predicate for the claim on direct appeal. *See United States v. Williams*, 205 F.3d 23, 35 (2d Cir. 2000); *United States v. Ortiz*, 100 F.4th 112, 118 (2d Cir. 2024).

violated the Confrontation Clause and, upon review, their admission did not amount to plain error.

5. The District Court did not abuse its discretion when it prohibited defense counsel from introducing certain privileged items into evidence, as this was an appropriate sanction for defense counsel's failure to abide by the District Court's protective order.

For the foregoing reasons, we **AFFIRM** the District Court's August 3, 2023, judgments of conviction.

Finally, while the conduct of the attorneys who advised Defendants over the course of their fraudulent scheme is not directly before us, the record reveals conduct that may warrant professional discipline. Accordingly, we direct the Clerk of Court to forward this opinion—and the record below—to the relevant New York State disciplinary authorities.